JOHN RANDOLPH CHAMBERS, Appellant, v. ARTHUR T. CHAMBERS et al.

Division One, March 5, 1923.

1. **CONTINUANCE: Absent Witness: Promise to Produce.** Plaintiff promised the court to be ready for trial on a certain day if the case was passed to that day; on that day he asked for a continuance on account of the absence of a witness who resided in a distant city and had promised to be present and had telegraphed that he would be present on a certain day three weeks hence, but plaintiff did not ask that the time be shortened in order that he might take the witness's deposition; and the testimony of the absent witness as set forth in the application was merely cumulative, there being a mass of testimony offered covering the same period and incidents. *Held,* (1) the plaintiff did not show diligence, (2) the condition imposed, and his acceptance and promise to be ready, partook of the nature of an order and is binding, and (3) there was no abuse of discretion in denying the continuance.

2. **WILL: Execution and Identification.** The burden is on the proponents to prove the signing of the will by the testator and the witnesses, and the testator's mental capacity. Where contestant in his petition alleged that an instrument was filed and admitted to probate as the will of testator and given a serial file number, testimony of the two witnesses that they had gone to the probate court, looked up the will in that file, made a memorandum of the number, examined their own signatures and that of the testator thereon and that both had identified it as the will to which was at-

Chambers v. Chambers.

tached their statutory affidavit when it was probated, sufficiently identified the instrument as the one in suit and proved its execution.

3. ———: Instruction: Execution: Testamentary Capacity: Assumption of Fact. Where there is no contention about the date the will was executed, it is not error to assume in the instruction that such was the date of its execution; and where the word "executed" is so plainly limited in the remainder of the instruction that it cannot reasonably be understood to include an assumption of mental capacity, but covers the subject of testamentary capacity in such a way that it must be found to exist independently of the clause in which the word "executed" is used, it will not be ruled that the instruction assumed that the will was executed.

4. ———: ———: General Capacity: Insane Delusion. An instruction telling the jury that if testator "had sufficient mind and memory to understand the ordinary affairs of life, to know that he was disposing of his property by will, to whom he was giving it, and who were the natural objects of his bounty, their necessities and deserts, and the general value, nature and character of his property, without the aid of any other person, then he was of sound and disposing mind," does not exclude every form of insanity or mania other than weakness or imbecility, and does not exclude insane delusions affecting the will, and especially when other instructions sufficiently covered the matter of delusions, and there was no substantial evidence that testator harbored delusions toward contestant.

5. ———: ———: ———: ———: The Word Deserts. That part of said instruction requiring the jury, before finding testamentary capacity, to find that testator had sufficient mind and memory to know who were the natural objects of his bounty, "their necessities and desserts" excludes the idea that he was moved by an insane delusion that contestant, for whose benefit a full share of his estate was given to a trustee, had no deserts.

6. ———: ———: ———: ———: Within Range of Natural Bounty. An instruction telling the jury that if they find from the evidence that the testator "had delusions from time to time on various subjects, yet if you further find that at the very time when he executed his will he was capable of comprehending all his property and all persons who came within the reasonable range of his bounty," etc., did not permit the jury to find him sane if he excluded one of his children because of an insane delusion, but on the contrary required them to find that he comprehended who deserved to be considered in the distribution of his estate.

7. ———: Insane Delusion: Gift to Contestant. A bequest to a trustee of a full share of his estate for the use of a profligate son
297 Mo.—33

during his natural life is a refutation by the will itself that testator was moved by an insane delusion toward said son.

8.  ——: ——: **Evidence: Attempted Poisoning.** Testimony that testator asked for hot water to weaken his coffee, and did not use it; that once upon a time when a witness offered him some cough medicine, he inquired if the witness was trying to poison him; that the testator at the time the witness offered the cough medicine did not accuse his profligate son "outright" of trying to poison him, "but acted suspicious," is not substantial evidence that testator harbored an insane delusion that the son was trying to poison him. And testimony by the same witness that testator visited said son's office every week and remained a considerable time is inconsistent with the idea that a delusion was in testator's mind that the son was trying to poison him.

9.  ——: ——: **Instruction: Invited by Appellant.** Appellant cannot complain of the definition of the words "sound and disposing mind and memory" contained in respondent's instruction when the same definition was contained in an instruction asked by him and given.

10. ——: ——: ——: **Unsupported by Evidence.** Where the delusions possessed by testator by no stretch of the imagination could be brought to have influenced the making of his will, an instruction leaving the jury free to find against the will on the theory that such delusions invalidated it and giving them a roving commission to determine what delusions influenced him, should not be given, and in declaring that one suffering from an insane delusion is "in that respect insane" was error in contestant's favor, but having been asked by appellant the giving of it was an error of which he cannot complain.

——: **Evidence: Conviction of Crime: Court Records.** In a will contest, the fact that contestant told testator that he had been convicted of vagrancy upon pleas of guilty, both before and after the will was executed, is competent upon the issue whether there was a reason for the limitation upon the devise to contestant. And where plaintiff has already admitted, without objection, that he was so convicted, error in admitting records of judgments showing his conviction, if technical error, was not prejudicial.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferriss*, Judge.

AFFIRMED.

*Geo. O. Durham, P. H. Cullen* and *Forest P. Tralles* for appellant.

(1)   The court erred in arbitrarily refusing a continuance, without compelling defendants to admit evidence set forth in the application.  Arbitrary refusal of application for continuance is reversible error and abuse of judicial discretion.  State v. DeWitt, 152 Mo. 76, 85; State v. Maddox, 117 Mo. 667;  Moore v. McCullough, 6 Mo. 444.  Passing the case the week before did not bar plaintiff's right to a continuance.  Moore v. McCullough, 6 Mo. 444.  The evidence was material and relevant and bore both on the issue of general unsoundness of mind and specific delusions, and without the evidence the court refused to submit delusive insanity to the jury.  With the evidence in the affidavit in the case the court could not have refused to submit such issue to the jury.  Wigginton v. Rule, 205 S. W. 168;  Knapp v. Trust Co., 199 Mo. 640.   (2)   The court erred in refusing plaintiff's peremptory instruction at the close of the case.  The defendants failed to sustain the burden of proof and prove the execution of the will.  (a)   The burden was on defendants to prove the particular will, including its signing by the testator  and witnesses in his presence, its genuineness and the soundness of mind of the testator.  Sec. 521, R. S. 1919;  Lindsay v. Shaner, 236 S. W. 319;  Bradford v. Blossom, 207 Mo. 177, 228;  Weber v. Strobel, 194 S. W. 272;  Major v. Kidd, 261 Mo. 607;  Goodfellow v. Shannon, 197 Mo. 271;  Hogan v. Lindeman, 153 Mo. 276; Bunsberg v. Wash. Univ., 251 Mo. 641;  40 Cyc. 1279; Secs. 507, 521, 522, 523, 528, R. S. 1919.  The will must be produced to the witnesses and execution shown with same formalities as in probate court and all parties granted right of cross-examination, and witness must identify the will.  Lindsay v. Shaner, 236 S. W. 319; Benoist v. Murin, 48 Mo. 48;  Bridwell v. Swank, 84 Mo. 455, 471;  Sec. 521, R. S. 1919;  40 Cyc. 1301.  Proponents must prove execution even though not controverted in the petition.  Craig v. Craig, 156 Mo. 358, 361.   (3)   The court erred in reading erroneous, improper, and conflicting instructions to the jury over objections of plaintiff. First. The instructions, particularly number 2, sub-

mitted to the jury the question as to the execution of the will on September 9, 1916, without proof. Harvey v. Chouteau, 14 Mo. 587; 40 Cyc. 1217. Second. The court improperly directed the jury (Instructions 4 and 8 read in connection with number 2) to find for the will if testator had capacity to comprehend his property, the persons who came within the range of his bounty, and intelligence enough to understand his ordinary business affairs and the disposition he was making of his property. This was error. It excluded every type or form of insanity or mania other than mere weakness or imbecility of intellect and excluded insane delusions affecting the will. Kisling v. Yoder, 236 S. W. 860; Wiggington v. Rule, 205 S. W. 168; Bensberg v. Wash. Univ., 251 Mo. 641; Byrne v. Fulkerson, 254 Mo. 97; Buford v. Gruber, 223 Mo. 231; Holton v. Cochran, 208 Mo. 314; Knapp v. Trust Co., 199 Mo. 640; Benoist v. Murin, 58 Mo. 307. (3) The court erred in refusing to read to the jury instruction numbered 7 in form as requested by plaintiff. It properly presented the issue of insane delusions or partial insanity. Wiggington v. Rule, 205 S. W. 168. (4) The purported record was in no sense a record. State ex rel. v. Cockrell, 217 S. W. 524; 2 Bouv. Law Dict. (Rawles, 3d Rev.) p. 1732. The court erroneously admitted evidence that plaintiff had twice been convicted of vagrancy in police court of Los Angeles, once prior to execution of will and codicil and once afterwards. Such evidence was inadmissible. State v. Teeter, 239 Mo. 475; State v. Phillips, 233 Mo. 239; State v. McDonough, 232 Mo. 219; Seymour v. Farrell, 51 Mo. 95; Patrick v. Adams, 19 Mo. 73. The record without charge or writ was incomplete. 1 Black on Judgments, sec. 124.

*Watts, Gentry & Lee* for respondents.

(1) Plaintiff's application for a continuance was properly denied. (a) One week before the trial, on the day first set for the trial, the plaintiff, over the objection of the defendant, secured a delay of one week on condi-

tion of a solemn promise that he would go to trial on Monday, March 22nd. He sought to break that condition when he applied on the last mentioned date for another continuance. The condition was binding. State ex rel. v. Thurman, 232 Mo. 130. (b) The affidavit did not show due diligence to procure the testimony of the absent witness. It is incumbent on a party asking continuance on account of absent witness to affirmatively show due diligence. State v. Cain, 247 Mo. 704; State v. Williams, 170 Mo. 204. (c) The evidence which the affidavit showed plaintiff desired to procure from the absent witness was merely cumulative, and was abundantly covered by the evidence of several other witnesses. (d) There being nothing to indicate abuse of discretion, this court will defer to the discretion of the circuit judge who overruled the application. State v. Cain, 247 Mo. 705. (2) The will and the codicil were properly identified by the subscribing witnesses, and every requirement of the statute and the decisions of this court was complied with. Lohman v. Lohman, 216 S. W. 518; Hughes v. Rader, 183 Mo. 636; Pritchard v. Thomas, 192 S. W. 956; Berst v. Noxom, 163 Mo. App. 127. (3) The criticism of the portion of instruction numbered 2, criticised for submitting the question of execution of the will, without evidence to support it, is wholly without merit, because the evidence clearly showed the execution of the identical will in question. (a) The criticism that instruction numbered 8, given by the court of its own motion, assumes that the will was executed on September 9th is of no force because the plaintiff in the instruction which he drew and which the court gave, assumed that the testator executed both the will and the codicil. (b) The definition of the term "sound and disposing memory" contained in instruction numbered 8 was correct. Mayes v. Mayes, 235 S. W. 100; Platt v. Platt, 236 S. W. 35; Hahn v. Hammerstein, 272 Mo. 259. Besides, the definition complained of is practically identical with that given in instruction numbered 6 requested by the plaintiff. (c) The modification of plaintiff's instruction numbered 7

was proper. It in no way misled the jury. When the instructions are read as a whole, the jury could not fail to understand that if the testator was insane when he executed the will, it could not be upheld. (4) The admission of the certified copies showing pleas of guilty to charges of vagrancy was not reversible error. (a) Plaintiff put his own character and standing as a business man in issue by attempting to prove by the witness Brundige that plaintiff was a fine business man who associated with the best of people, and bore a good name. This made it competent to show plaintiff's own admission, by pleas of guilty in court, that he was a vagrant within the meaning of the law. (b) The subject was gone into quite fully in plaintiff's deposition, which was read as an admission against interest. No objection was made to evidence on that subject when it was read. Plaintiff should have objected then if he desired to object to that line of testimony, but having failed to do so, it was too late to object later when evidence on the same subject was offered. Ayres v. Middleton Theater Co., 210 S. W. 911; Smith v. Woodmen of World, 179 Mo. 133; Grocer Co. v. Smith, 74 Mo. App. 419; Lewis v. Humphries, 64 Mo. App. 466. (c) The copies were in due form and showed the judgments as set forth on the records of the police courts in Los Angeles. (d) The testator was shown to have known all about at least one of these pleas of guilty, and the evidence tends to show that he knew of the other. The first one was before the will was written. There was no substantial evidence of lack of testamentary capacity on the part of James H. Chambers at the time of the execution of either the will or the codicil. The court should, therefore, have given defendants' peremptory instruction to find for the will and the codicil. Evidence of personal peculiarities, of talking disconnectedly at times, of showing effects of age and physical weakness, of fanaticism on certain questions, of personal peculiarities of getting lost, or failing to recognize certain people at intervals distant from the time of the execution of either the will or the codicil, could not

justify the submission of the issue of want of testamentary capacity at the time of the execution of either of said instruments. Giboney v. Foster, 230 Mo. 106; Winn v. Grier, 217 Mo. 420; Coberly v. Donovan, 208 S. W. 47; Nook v. Zuck, 233 S. W. 233; Platt v. Platt, 236 S. W. 35; Binsberg v. Washington University, 251 Mo. 658; Hahn v. Hammerstein, 272 Mo. 240; Huffnagle v. Pauley, 219 S. W. 373; Sayer v. Trustees of Princeton Univ., 192 Mo. 95; Messick v. Warren, 217 S. W. 94; Vaughan v. De Veld, 143 Mo. 348; Sehr v. Lindemann, 153 Mo. 288. Since a peremptory instruction should have been given for defendants, the court will not look for technical errors. (5) Even if any slight irregularity or technical error could be found in this voluminous record of a trial lasting five days, it would not be sufficient to justify the granting of a new trial. Huffnagle v. Pauley, 219 S. W. 379; Thompson v. Isch, 99 Mo. 160.

JAMES T. BLAIR, J.—This is a will contest. Plaintiff is a son of testator by his first wife, and the defendants are his second wife and the three children of the second marriage. There was a verdict upholding the will, and from the judgment entered thereon this appeal was taken.

Testator devised to his wife all his household and kitchen furniture, books, jewelry and "personal chattels of every nature" and also one-fifth of the residue of the estate. Three-fifths of the residue he put in trust for ten years for the three children of the second marriage, the personalty to be paid to them at the end of ten years, but the trust as to realty unsold to continue for a further period not exceeding ten years. The remaining one-fifth of the residue is given to a trustee for plaintiff for life, the *corpus* to go at plaintiff's death in equal shares to the wife and the other three children or the descendants of the latter. The will goes into great detail as to the management of the trust property by the trustee, the Mississippi Valley Trust Company. By a codicil testator made provision that if he survived his wife, the prop-

erty should be divided into fourths instead of fifths, and also provided for the release to the children of the second marriage of their proportion of the stock of the Dios Chemical Company, freed from the trust created by the will with respect to it. The petition charged undue influence and lack of testamentary capacity.

Plaintiff had given his father a great deal of trouble. He had served one term in the California penitentiary, and had been convicted of vagrancy and given hours to leave the town in which this occurred. He is shown' to have been a vicious and profligate man. This is proved by records, letters and plaintiff's own admissions.

There was evidence *pro* and *con* upon the issue of testamentary capacity. It is unnecessary, in view of the questions raised, to set it out in detail. There was no evidence of undue influence, and the court took that issue from the jury. Other facts necessary to a decision will be stated in connection with the questions to which they are relevant.

I. When the case was called for trial on March 15th, counsel for plaintiff asked a postponement to a later day in the term so that other counsel but recently employed might have time to prepare himself to conduct the trial as was desired. No other ground for postponement

Continuance. was urged. Defendants were ready and opposed postponement. The trial court then called the plaintiff forward and said to him: "If I pass this case until next Monday (March 22nd) will you be ready and go to trial at that time?" · To which plaintiff replied: "I will, your honor." The court then announced the case would be passed as indicated, and plaintiff's counsel assured the judge that they would be ready to proceed on that day. When the case was called on March 22nd, plaintiff filed an application for a continuance. It was stated that Dan F. Reynolds, of Washington, D. C., was the witness whose testimony was desired and necessary to a fair trial; that his deposition had not been taken because several weeks before he had promised

to be present personally; that counsel had been advised by wire "last week" that pressing business would prevent Mr. Reynolds's attendance prior to April 15th. The testimony he was alleged to be ready to give had reference to testamentary capacity only and related to the period during which testator was in California. Numerous witnesses, both lay and expert, testified concerning testator's condition and activities during this period, and to the same conditions and incidents the application indicated would be covered by Reynolds's testimony. The court refused a continuance, and it is insisted the ruling was error. The record shows no abuse of discretion. (1) Plaintiff chose to rely upon the promise of Reynolds rather than the process of the court. When an application for a postponement was made on March 15th he accepted the postponement on the condition that he would go to trial on the 22nd. He might then have asked a shortening of the time for taking Reynolds's deposition and thus protected himself. Again he chose to rely upon Reynolds's promise. The application does not show the sort of diligence which is a condition precedent to the conviction of a trial court of error in refusing a continuance. (2) There is authority for the view that a condition like that imposed and accepted on the 15th becomes a part of the order and is binding. While State ex rel. v. Thurman, 232 Mo. 130, is different in its facts, cases are cited (1. c. 159 et seq.) which apply here. (3) The testimony of Reynolds would have been no more than cumulative. There was a mass of evidence offered covering the same period and incidents. There was no abuse of discretion. [Cooley v. Railroad Co., 149 Mo. 1. c. 492.]

II. It is urged that defendants failed to prove the execution of the will and that plaintiff's peremptory instruction should have been given. The burden was upon proponents to prove the signing by the testator and the

Identification.     witnesses and testator's mental capacity. [Lindsay v. Shaner, 291 Mo. 297, 236 S. W. 1. c. 323, 324; Morton v. Heidorn, 135 Mo. 608.] Plaintiff

contends that the witnesses did not sufficiently identify the will and that this leaves a fatal gap in the evidence.

The petition alleges that a writing, dated September 9, 1916, had been presented to the probate court and admitted to probate as the will of James H. Chambers, and that a codicil thereto bore date April 25, 1917, and "both are now on file in said probate court in files numbered 48638 and were probated as and for the last will and testament of said James H. Chambers." In several places the petition states that the "purported will and codicil" were executed. The petition attacks the mental capacity of the testator and alleges undue influence, but contains nothing qualifying the allegations of execution in so far as that relates only to the signing by testator and the witnessing of the will. The witness, Lewis, a resident of New York, testified, by deposition taken in St. Louis, that he witnessed the will of September 9, 1916, and that on the day his deposition was taken he went to the probate court and looked up the will in file No. 48638, made a memorandum of the number, examined his own signature and that of testator and the other witness and testified as to the instrument he thus identified. Mr. Hitchcock testified by deposition that he witnessed the will and that after testator's death had gone to the probate court and made the statutory affidavit in connection with the instrument then on file in the probate court as the will of testator. The will in evidence is the one proved in the probate court. There is no doubt this evidence was adequate to justify the trial court in ruling adversely on the point made.

III. It is contended instruction numbered 8 assumes that the will was executed on September 9, 1916, and is therefore erroneous. There was no contention about the date. Further, plaintiff asked instructions assuming that testator signed the will, and the word "executed" used in instruction numbered 8 is plainly limited by the remainder of the instruction so that it could not reasonably be understood

Execution:
Assumption.

to include an assumption of mental capacity. This is true because the instruction covers the subject of testamentary capacity in such a way that it must be found to exist independently of the clause in which the word "executed" is used. In addition, the petition alleges the will was signed under date of September 9, 1916, and the will in evidence showed that to be the fact.

IV. In instruction numbered 4 the jury were told, among other things, that if at the time testator signed the will and codicil, if he did sign them, "he had sufficient mind and memory to understand the ordinary affairs of life, to know that he was disposing of his property by will, to whom he was giving it, and who were the natural objects of his bounty, their necessities and deserts, and the general value, nature and character of his property, without the aid of any other person, then he was of sound and disposing mind; and in this connection," etc. Instruction numbered 8 read as follows:

**Insane Delusion: Exclusion.**

"If you find from the evidence that James H. Chambers had delusions from time to time on various subjects, yet if you further find from the evidence that at the very time when he executed his will and at the very time when he executed the codicil he was capable of comprehending all his property and all persons who reasonably came within the range of his bounty, and did have sufficient intelligence to understand his ordinary business affairs, and the disposition he was making of his property, then he was of sound and disposing mind at the time of the execution of the will and codicil."

It is argued that these definitions "excluded every type or form of insanity or mania other than mere weakness or imbecility of intellect, and excluded insane delusions affecting the will." It was quoted in Knapp v. Trust Co., 199 Mo. 1. c. 667, approved in Wigginton v. Rule, 275 Mo. 412: "Whenever the person conceives something extravagant to exist, which has in fact no existence whatever, and he is incapable of being reasoned

out of this false belief, it constitutes insanity; and if this delusion regard his property, he is incapable of making a will. . . . Whenever it appears that the will is the direct offspring of the partial insanity or monomania under which the testator was laboring, it should be regarded as invalid though his general capacity be unimpeached.'' It is obvious that the point plaintiff now makes is not supported by the mere general testimony tending to show testator harbored delusions of persecution and the like which there is nothing to show testator attributed to plaintiff and which have nothing in them tending to account for the limitations upon the bequest to plaintiff. Such delusions, if they exist, may tend to prove general incapacity, but, lacking the tendency in themselves to account for the will, they take their place with other evidence of incapacity for whatever they are worth. In this case appellant relies on the testimony of Brundage to show a delusion which might have produced the part of the will to which plaintiff objects. (1) That testimony does not constitute substantial evidence that testator harbored a delusion that plaintiff was trying to poison him. He asked for hot water to weaken his coffee and then did not use it. That was one incident. Another was that when Brundage offered him some cough medicine testator said: ''Are you trying to poison me, too?'' That testator visited his son's office every week, once or more, and staid a considerable time is inconsistent with the idea that a delusion that his son was trying to poison him was in his mind. Brundage says that testator did not accuse plaintiff ''outright'' but acted suspicious; that this statement has reference to the cough medicine incident. This evidence is too slight to support such an inference as appellant now draws. Besides, the will refutes it. What could there be in a delusion such as claimed, that would have any tendency to result in a devise to plaintiff of a full share of testator's estate for life? Had plaintiff been disinherited there would be better ground for the contention. The reasons for the giving of a life estate are found in the records of

the criminal courts of California and of the penitentiary at San Quentin, which are conclusively established in this case. (2) In addition, the jury were required by Instruction 4, supra, before finding testamentary capacity, to find that testator had sufficient mind and memory to know who were the natural objects of his bounty, their necessities *and deserts*. It is obvious that this finding ould not be made if the jury believed that testator was moved in plaintiff's case by an insane delusion that plaintiff had no "deserts," but the contrary, when in fact plaintiff was deserving a full share in fee. This general language, in connection with the other instructions on delusions, covered the matter sufficiently. The same thing may be said of the phrase "all persons who reasonably came within the range of his bounty" in Instruction 8. This did not permit the jury to find testator sane if he excluded plaintiff because of an insane delusion. It required a finding that testator comprehended all who, *in fact,* came within the range of his bounty; i. e. understood who deserved, *in fact,* to be consideerd in the distribution of his estate, and not merely such as were not excluded by insane delusions. (3) Finally, plaintiff requested and the court gave Instruction 6 in which, after other matter not affecting the question in hand, appears the following:

"He must have had at the time an intelligent comprehension of the surrounding circumstances, and of their direct consequences and probable results. To constitute a sound disposing mind, the testator must have been able not only to understand that he is by will disposing of his property, but he also must have capacity sufficient to comprehend the extent of the property devised, and the claims of others upon him; and if he did not possess all these requisites, then under the law he was not competent to make a will or a codicil to a will."

In the last sentence plaintiff goes beyond the mere statement of a fact or facts which will warrant a judgment for him and which might not have invited the error of treating such fact or facts, conversely stated, as au-

thorizing a verdict for defendants. He undertakes to define, generally, a "sound disposing mind and memory." By doing so he invited the use of his definition by the court and defendants. If either definition is subject to the criticism now made, both are so and plaintiff cannot complain of invited error.

V. Instruction 7 as offered by plaintiff defined insane delusions as defined in the quotation from Knapp v. Trust Co., supra, and further told them that one suffering from such a delusion is insane. To this was added a paragraph that if the jury found that testator "was laboring under such a delusion or delusions" at the time he signed the will and codicil, and found that "such writings are the direct offspring of said delusion or delusions and were produced thereby, then you should find against the will and codicil, even though," etc. The court removed this last paragraph and gave the instruction as thus modified. (1) The instruction could well have been refused, *in toto*. There was evidence that testator had certain delusions which by no stretch of the imagination could be thought to have influenced the making of the will or codicil. The last paragraph of the instruction, if not the preceding matter, left the jury free to find against defendants on the theory that each of these delusions, in itself, invalidated the will and codicil. It failed to confine the jury to such delusions, if any, as under the evidence and law might have been found to have induced the making of the will, and gave them a roving commission to determine what delusions were supported by a showing that they influenced the making of the will. (2) The instruction as given is error in plaintiff's favor, since it declares outrght that one suffering from an insane delusion is "in that respect insane." It is misleading in that a jury might infer from a delusion having nothing to do with the will the insanity necessary to invalidate the will under the other instruction on testamentary capacity.

VI. It is argued that the trial court erred in ad-

mitting judgments showing plaintiff's conviction, on pleas of guilty, of vagrancy. Plaintiff's own admissions that he was so convicted and pleaded guilty were already in the record without objection. Whether or not the judgments were technically admissible, they could not, in these circumstances, be held prejudicial. Further, plaintiff's admission that he told testator of these convictions is also in evidence without objection or explanation. The fact was competent upon the issue whether there was a reason for the limitations upon the devise to plaintiff. One conviction was subsequent to the execution of the will and codicil, but was relevant to the question of the reasonableness of testator's adherence to the will and codicil as drawn. In any event plaintiff was not prejudiced.

The judgment is affirmed. All concur.