EDWARD T. HALL v. SUSANNAH T. WILLIAMS, Appellant.—50 S. W. (2d) 138.

Division One, May 27, 1932.

474

*Buder & Buder* and *G. A. Buder, Jr.*, for appellant.

*George Barnett* and *Smith & Pearcy* for respondent.

476

ATWOOD, J.—Edward T. Hall brought suit against Susannah T. Williams for specific performance of a contract to convey certain real estate in St. Louis County. From an adverse judgment defendant prosecutes this appeal.

This contract, set forth in full in plaintiff's petition, was entered into by and between defendant Susannah Williams, her sister Berta Williams, her brother Robert T. Williams, her sister Mrs. Mollie Williams Trimble, her brother-in-law H. B. Trimble, and her father Samuel Williams, as parties of the first part, and Edward T. Hall, as party of the second part, and bore date of April 8, 1922. It provided for the sale and conveyance by parties of the first part to party of the second part of two tracts of land, one containing 11.82 acres and another containing 9.73 acres, the latter tract being

then occupied by parties of the first part as their home, for the total sum of $32,325 payable as follows: $17,730 cash on delivery on or before April 28, 1922, of warranty deed from first parties conveying the 11.82-acre tract to party of the second part, and $14,595 cash on delivery of warranty deed within 90 days after the decease of the said Samuel Williams of warranty deed from the said Susanah T. Williams conveying the 9.73-acre tract to party of the second part.

Plaintiff alleged in his petition that the 11.82 tract was conveyed in accordance with the terms of said contract, but that notwithstanding the said Samuel Williams departed this life on the 24th day of January, 1928, and on the 28th day of March, 1928, and again thereafter, plaintiff tendered to the said Susannah T. Williams, who is now and ever since the year 1918 has been the owner of said 9.73-acre tract and holder of the complete title thereof, $14,595 in cash and a warranty deed to be executed thereto by her as provided in said contract, the said Susannah T. Williams then and there failed and refused and has ever since failed and refused to accept said purchase money and execute and deliver said deed.

Defendant went to trial on her amended answer containing a general denial and a further plea of inadequate consideration, dual agency and ''fraud, deceit, misrepresentation, undue influence, coercion and overreaching by and on the part of the plaintiff, his agents, servants and associates,'' and praying that said contract ''be declared invalid, null, void and of no effect'' and that she be declared to be the lawful owner of said 9.73-acre tract free and clear of all claims and demands of the plaintiff.

In his reply plaintiff denied all new matter alleged in defendant's answer and pleaded the five-year Statute of Limitations, and acquiescence, estoppel and laches in bar of defendant's claims.

On the day of the trial, November 23, 1928, defendant filed her application and affidavit for a continuance on the ground that she had been unable to obtain the attendance of a material witness. Appellant contends that the action of the trial court in overruling this application for a continuance was reversible error. It appears from the application and affidavit that no effort was made to procure the attendance of this witness until November 12, 1928, when a subpoena for him was delivered to the Sheriff of St. Louis County who failed to obtain service. On the next day defendant's counsel was advised that the person sought was living in the State of California. No application was made for shortening the time for taking his deposition, and no further effort was made to procure his testimony except to send a letter by air mail and a telegram to what was thought to be his address in California requesting his attendance,

all of which resulted in no definite assurance that he received either letter or telegram.

The granting of a continuance rests largely in the discretion of the court before which it is made, and every intendment is in favor of the ruling thereon. [Leabo v. Goode, 67 Mo. 126, 132.] We think the showing was inadequate, under the decisions, to constitute diligence. [Hamiltons v. Moody, 21 Mo. 79; Globe Mut. Ins. Co. v. Carson, 31 Mo. 218, 221, 222; Bartholow v. Campbell, 56 Mo. 117, 119; Chambers v. Chambers, 297 Mo. 512, 521, 249 S. W. 415.] Furthermore, it appears that the testimony of the absent witness, even if given in substance as set forth in the affidavit, would have been merely cumulative, and in such case there is no abuse of discretion in denying an application for continuance. [Chambers v. Chambers, 297 Mo. 512, 521, 249 S. W. 415; Cooley v. Railroad Co., 149 Mo. 487, 492, 51 S. W. 101; Cash v. Wysocki (Mo. App.), 229 S. W. 428, 430.] Consequently, this point is ruled against appellant.

It is next urged in appellant's behalf that the Webster Groves Trust Company, without the knowledge and consent of defendant, acted as the agent of both plaintiff and defendant in negotiating and consummating the sale of the real estate in question, and because of such dual agency the contract therefor was voidable. The principle of law invoked is familiar and well supported by authority. [McElroy v. Maxwell, 101 Mo. 294, 303, 14 S. W. 1; 2 C. J. pp. 712, 713; 21 R. C. L. p. 827, sec. 11, n. 19; Am. L. Inst. Restatement, Agency (Tent.), sec. 612.] Do the facts here in evidence warrant its application?

It appears that on April 27, 1921, defendant's sister, Berta Williams, signing her name as agent, and also signing the name ''Miss S. T. Williams,'' entered into a contract with the Webster Groves Trust Company appointing it exclusive agent to sell the two tracts of land aforesaid, comprising in all 21.55 acres, at $1500 an acre. Counsel for appellant do not now seriously contend that this agency contract did not bind all owners of the land. It does not appear that the Trust Company at that time represented plaintiff in connection with this or any other property. Some months thereafter plaintiff saw the ''for sale'' sign on the property and began to negotiate with the Trust Company to purchase same. Thereafter, on December 31, 1921, defendant's sister Berta Williams, signing her name as agent, gave the Trust Company a sixty-day notice of cancellation of its agency to sell the property. In February, 1922, and within said sixty-day period, plaintiff tendered to the Trust Company as agent of the owners of the property $500 earnest money with an agreement to purchase the entire 21.55 acres at the listed price of $1500 an acre. The record does not disclose that at this

time the Trust Company represented plaintiff in connection with this or any other property. On March 1, 1922, the Webster Groves Trust Company sent the following letter to Miss S. T. Williams and Miss Berta Williams et al., Webster Groves, Missouri:

"In accordance with your telephone request last evening, we have with Mr. Trimble prepared a contract which he thinks will be satisfactory to you and am attaching hereto two copies for your signature.

"We want to make it clear that we consider the contract which was submitted to you yesterday for the purchase of your 21.55 acres as sufficient and binding and in accordance with the contract of agency, which we hold from you. It is only in compliance with your wish that we have prepared the attached contract and after it is signed by you, we will use our best efforts to have it signed by Mr. Hall, but should he in the meantime, change his mind and refuse to sign it, or should he in the meantime, withdraw the offer which we submitted to you yesterday, then we will consider that the blame is entirely yours and that we shall be entitled to our full commission, inasmuch as we had produced a buyer who was willing to buy and had made a bona fide offer in accordance with the price and terms set by you in appointing us as your agent."

Testifying with reference to this letter defendant said: "I am sure that I never called them up on the telephone." She also testified that she never saw this letter. However, it does appear that H. B. Trimble, defendant's brother-in-law who was experienced in real estate matters, in conjunction with the Trust Company either immediately before or shortly after this letter was written, worked out a plan of division of the property under which the south 9.73 acres could be occupied by Samuel Williams and his family during his lifetime, and the north 11.82 acres transferred immediately to plaintiff under and in pursuance of a contract calling for the sale of the entire tract of 21.55 acres to plaintiff for a total consideration of $32,325, or $1500 an acre at which price the property was listed for sale with the Trust Company, to which plaintiff agreed. These concessions apparently grew out of the reluctance of defendant and her aged father to surrender possession of all of the land at that time. E. J. Burgard, a salesman of the Trust Company who handled the matter, testifying as to these negotiations said of the Williams family:

"Well, they had it under consideration for some time, for several weeks, I think; they were holding out for no particular desire; in fact, as I recall it, they were rather undecided and did not know what they were going to do, whether to pay us our commission, call it off, or draw up an arrangement, a counter proposition to which they and Mr. Hall would agree."

Before the members of the Williams' family actually signed this agreement of purchase and sale plaintiff listed for sale with the Webster Groves Trust Company certain property owned by him on Gore Avenue in Webster Groves. This listing did not occur until March 27, 1922, and the Gore Avenue property was not sold until some time thereafter. On April 8, 1922, the contract for the purchase and sale of the 21.55 acres was signed by plaintiff and defendant and the other members of her family in the form above indicated, plaintiff having agreed to the concessions suggested by Mr. Trimble in behalf of the Williams family.

Counsel for appellant first assert that the Trust Company having on March 27, 1922, without defendant's knowledge or consent, become the agent of plaintiff to sell other property belonging to him, and the contract for the sale of the Williams land to plaintiff having been executed thereafter, such facts constituted a dual agency on the part of the Trust Company that entitled defendant to avoid the contract. ▇ The dual agency carried on without the knowledge of one of the parties to a contract and condemned by the authorities cited by appellant relates to the same transaction and rests on the ancient maxim that ''no servant can serve two masters,'' (21 R. C. L. p. 827), and this on the principle that one is entitled to the candid, unbiased advice and loyal efforts of his agent, which he could not obtain if such agent also secretly represented the other party in the transaction. [Windsor v. International Life Ins. Co., 325 Mo. 772, 29 S. W. (2d) 1112, 1117.] ▇ While conceding that the sale of the Williams property and the sale of plaintiff's property were two separate transactions appellant nevertheless contends that they were so closely related and interdependent that the element of undisclosed divided loyalty on the part of the common agent, that characterizes the dual agency ordinarily condemned, was necessarily present in the sale of the Williams' land. We do not so view the evidence. Nearly if not quite a month before plaintiff's property was listed with the Trust Company this agent had procured in plaintiff a purchaser for the Williams' property ready, able and willing to buy at the price, on the terms and within the time it was listed for sale by the owners, who were thereupon confronted with the choice of accepting or refusing the offer and abiding such consequences as might attend either event. This was evidently well understood and fully discussed by all members of the Williams family. In its above quoted letter of March 1, 1922, the Trust Company insisted that in procuring such a purchaser it had done all within its power to do as their agent unless they were willing to convey and that its commission was fully earned. After availing herself of legal advice in the matter defendant seemed convinced that such was the case. The sole cause of delay in executing.

the contract was the owner's unwillingness to perform unless the purchaser would agree to concessions above noted which were not included in their original offer of sale. It does not appear that plaintiff's offer to buy was ever at any stage of the negotiations contingent or dependent upon sale of his Gore Avenue property, and we can think of no conflict in the two transactions that would incline the Trust Company as plaintiff's agent in the sale of his property to divide the interest and loyalty it owed the Williams family as their agent in selling their property.

Counsel for appellant further contend that there was evidence from which we should conclude that the Trust Company was acting as the agent of plaintiff as well as the agent of the Williams family in the very transaction of furnishing a purchaser for the Williams property. ■ The particular facts cited and relied upon in their brief are a newspaper comment to the effect that when the contract of sale was finally executed on April 8, 1922, "E. J. Burkhart of the real estate department of the Webster Groves Trust Company represented both parties in the transaction;" that sometime prior to the commencement of any negotiations whatever for the purchase of the Williams property the Trust Company had sold plaintiff another piece of property; that on March 27, 1922, after plaintiff had offered to buy the Williams property at the price and on the terms it was listed for sale and before the owners had finally executed the contract, plaintiff had listed other property of his own for sale with the Trust Company as aforesaid; and that when conveyance of part of the Williams property was made to plaintiff he procured a loan from the Trust Company in order to facilitate payment of part of the purchase price to the sellers. In the light of all the evidence we think the newspaper comment is without probative value on the question of dual agency. Nor was proof of plaintiff's prior employment of this agent in a single transaction any evidence of subsequent employment in another transaction. Of the same negative character is proof of subsequent employment in a different transaction from the one in question. Also, as said in Am. L. Inst. Restatement, Agency (Tent.), section 612, comment f, "an agent employed to sell may properly loan money to the buyer to complete the purchase." We do not think these facts were sufficient to prove such dual agency as would render voidable the contract here in question.

■ Appellant also insists that specific performance should not have been decreed for plaintiff because of fraud and deceit practiced by him upon her. In her answer defendant pleaded "that at and prior to the time the contract of April 8, 1922, mentioned and set forth in the petition, was entered into, plaintiff, his agents, servants and associates, represented to defendant that the Public Service Commis-

sion had granted authority and permission for laying and constructing a sewer through, upon and across the tract of land and real estate constituting the 21.55 acres mentioned and described in said aforementioned contract; that he, the plaintiff, had positive information to the effect that a certain suit, which was then pending before the Missouri Supreme Court, to stop and prevent the laying and construction of said sewer, had actually been decided adversely to the plaintiffs therein and that said decision would very shortly be made public; that the sewer would be laid directly through, upon and across the tract of land and real estate aforementioned; and that the tax and assessment resulting from the laying and construction of said sewer, which defendant and her family would be required to pay, would be very great and burdensome.''

In support of the above charge defendant testified that ''on Sunday morning very shortly before the signing of the contract'' she went to plaintiff's home, and in the course of her conversation with him he said '' that he had positive information, or from some reliable authority, something of that sort, that that sewer tax had been decided in favor of the sewer.'' She said that she had no other conversation with him relative to the Supreme Court decision concerning this sewer until some time after the sale had gone through when in a conversation with plaintiff on her front porch she reproached him for his statement previously made to her in this matter. She testified that he replied: ''Mr. Coggeshall must have told you that.'' Plaintiff very positively denied that he ever made any such statements to defendant. As a matter of fact the record before us shows that the Supreme Court opinion in the sewer case was not delivered until April 8, 1922, the very day the contract was signed. There was testimony that the Trust Company's agent Burgard said he had told defendant that the sewer was going through the property, but there is no evidence that plaintiff authorized or had knowledge of any such representation. After a careful consideration of all relevant facts in evidence we are of the opinion that the chancellor properly found that plaintiff did not make the alleged misrepresentations.

In the light of our above stated conclusions it is unnecessary to discuss other matters urged by respondent. The case was well tried by the chancellor and the judgment is affirmed. All concur.