254 S.W.2d 605 (1953)
COMMERCIAL NAT. BANK OF KANSAS CITY, KAN.
v.
WHITE.
No. 42853.
Supreme Court of Missouri, Division No. 2.
January 9, 1953.
Motion for Rehearing or to Transfer to Denied February 9, 1953.
J. K. Owens, Kansas City, for appellant.
Lathrop, Woodson, Righter, Blackwell & Parker and Howard A. Crawford, Kansas *606 City, McAnany, Van Cleave & Phillips and P. B. McAnany, Kansas City, for respondent.
Motion for Rehearing or to Transfer to Court En Banc Denied February 9, 1953.
BOHLING, Commissioner.
The Commercial National Bank of Kansas City, Kansas, a corporation, recovered a judgment against Calvin W. White for $8,200 in a suit on a note and defendant has appealed. We refer to the parties as plaintiff and defendant. Defendant assigns error in refusing a continuance, in the form of verdict instruction, and on the ground the judgment did not dispose of all issues, to wit: defendant's counterclaim.
The note sued on was for $8,400, dated June 26, 1948, and due July 26, 1948, with 4% interest from date and 10% interest after maturity, made, executed, and payable at plaintiff's banking house in Kansas City, Kansas. Plaintiff pleaded the applicability of the Kansas law.
Defendant, in his Second Amended Answer and Counterclaim, alleged the note was the renewal of a $10,800 note dated June 17, 1947, and that he executed each note without a consideration. For his counterclaim he alleged his execution of and payments on the notes were the result of false and fraudulent representations of plaintiff's officers and employees that a mistake had been made by plaintiff's employees; that plaintiff maliciously informed others of the unpaid note and maliciously filed suit to damage defendant's name and credit, and that he was entitled to recover his payments (as amended) of $2,859.74 on the note and $50,000 punitive damages. At the close of the evidence defendant also amended his answer by striking out all that portion relating to punitive damages.
Plaintiff's reply was in effect a denial of the principal allegations of defendant's counterclaim.
Defendant was a customer of plaintiff bank. He testified he did not carry too much money in banks but would have the bank issue cashier's checks payable to himself, and would carry the checks in his pocket or place them in his box at the bank.
Stanley Ford had charge of plaintiff's discount cage, where plaintiff, among other things, issued cashier's checks. Mrs. Grace Asbury had been assisting Mr. Ford for about two months when, while he was out for lunch on December 31, 1946, defendant came to the discount cage and gave her $1,200 to purchase a cashier's check payable to himself. She testified that he appeared irritated about having to wait or something, "sort of bawled me out," making her nervous; that after she counted the $1,200 she proceeded to issue the cashier's check (tore the check out of the book, took it to the typewriter, typed in the date, his name as payee and the amount, then cut the amount of the check in the center with the check protector), and registered the check in the cashier's check register. The cashier's check register had blank spaces used for entering, among other things, the date, the name of the payee of the check and of the purchaser, the amount of the check, and the date of its payment. She handed the check to defendant and told him to have one of the officers sign it. Defendant took the check, looked at it, and departed.
Defendant presented the cashier's check to Jack Torbert, one of plaintiff's vicepresidents, who signed it. Cashier's checks were supposed to be correctly made out and the officers did not question them when presented for signature.
The books of the discount cage were $10,800 short on December 31, 1946. Mrs. Asbury started looking through the cashier's check register. She noted the entry covering the transaction with defendant was for $12,000. She knew the entry should have been for $1,200 and the $12,000 entry was wrong. She drew a line through the "$12,000" and wrote $1,200 above it. The books then balanced. She informed Mr. Ford of the situation. She and Mr. Ford were of the opinion the check had been issued for $1,200, the amount she received from defendant, and the only error was in the entry in the cashier's check register.
Defendant cashed the check at the City National Bank and Trust Company on May 17, 1947, and, passing through the clearing house, it was presented to and paid by *607 plaintiff on May 19, 1947. The check was for $12,000, the wrong amount. This was the first information plaintiff, its officers and employees had that the error extended beyond the entry in plaintiff's cashier's check register.
J. D. Bjorkman, a vice-president of plaintiff bank who was acquainted with defendant, saw defendant a day or two after the $12,000 check was paid. He testified defendant stated his books were being audited and, if he had the money, he would return it.
In June, 1947, defendant came to plaintiff's bank to see Mr. Bjorkman, who was out of town. He then saw A. P. Gabel, plaintiff's cashier, and J. Ward Martin, one of plaintiff's vice-presidents. He informed them his auditors had finished their work and his records showed his assets were long $10,800 and he was ready to settle the matter. He expected to have the cash in a few days when he completed a real estate transaction. He then executed his demand note for $10,800, dated June 17, 1947, and payable to plaintiff, drawing 1% interest. Thereafter, defendant made fourteen interest payments and four payments on the principal of this note, reducing it to $8,400.
The $10,800 note not having been paid, defendant, at plaintiff's request, executed a renewal note on June 26, 1948, the note in suit. He made three interest payments and one principal payment of $200 on said note in 1948, but thereafter refused to make payments thereon.
Defendant wrote plaintiff two letters. We quote the material portions. The first, dated January 23, 1948, enclosed a check to apply on the interest and stated: "I will be in shortly with a principal payment after closing sale pending." The other, dated October 30, 1948, after the execution of the renewal note, enclosed a check to apply on the note, a $200 payment on the principal, and stated: "I will now make payments often & as soon as I wind up my long pending deal, I will wipe the slate."
We briefly state the testimony favorable to defendant. Defendant testified he had $15,000 cash when he went to plaintiff bank on December 31, 1946. He did not purchase a cashier's check for $1,200 at plaintiff's discount cage that day. He told Mr. Torbert he wanted a cashier's check for $12,000, gave the $12,000 to Mr. Torbert, who gave defendant the $12,000 check, and when he came out of the bank he had $3,000 and the check. He thought on June 17, 1947, he did not owe the $10,800. He executed the note to show his honesty and with the understanding plaintiff would show him from its records that there had been a mistake of $10,800 in his account and plaintiff would return the note and refund anything he paid on it if plaintiff did not establish the mistake by its records. He thought he did not owe the debt when he executed the renewal note on June 26, 1948, because plaintiff had not shown him the records, and he executed it because he still thought plaintiff would establish the mistake and to maintain his standing with the people he dealt with.
On the day the case was set for trial, to wit, May 21, 1951, defendant filed his application and affidavit for a continuance based on the absence of Ralph Hutcheson, a certified public accountant who was familiar with defendant's books and records covering the time involved, and who, he affirmed, would testify that there was no discrepancy in defendant's accounts, and that his books were not out of balance in the amount of $10,800. It appears from the affidavit the case had been set for trial approximately three weeks prior, and upon defendant presenting a telegram stating said witness would be in Kansas City to testify any time after May 15, 1951, the court set the trial for May 21st, and defendant, for that reason, did not take Hutcheson's deposition; that on Saturday. May 19th, defendant ascertained by a long distance telephone call that said witness was in the State of Nevada for his health, had accepted employment there, and would not return to Kansas City to testify in the case. The trial court overruled the application.
Generally, a satisfactory showing that the trial court has abused its discretion in refusing a continuance must be made for an appellate court to hold reversible *608 error has been committed. Hall v. Williams, 330 Mo. 473, 50 S.W.2d 138, 139 [1-3]; Chambers v. Chambers, 297 Mo. 512, 249 S.W. 415, 416[1-3]; Rhodes v. Guhman, 156 Mo.App. 344, 137 S.W. 88, 94[6]; McGinley v. McGinley, Mo.App., 170 S.W.2d 938, 940[1-4]. The case of Keltner v. Threlkel, 316 Mo. 609, 291 S.W. 462, 464, relied on by defendant, had been transferred from Independence to Division I of the circuit court at Kansas City on appellant's application for a change of venue on January 7th. Appellant's attorney on that afternoon and twice in the morning and again at 2:00 p.m. on the following day applied for a subpoena for his witnesses. The clerk refused to issue the subpoena because the transcript had not been received. Later, that afternoon appellant succeeded in securing a subpoena and placed it in the hands of the sheriff, who made a non est return, stating he had not received the subpoena in time to serve the witnesses as his force was not sufficient. The court proceeded with the trial the next morning, the 9th, after overruling appellant's application for a continuance made on the ground appellant had been unable to obtain the attendance of her witnesses, all of whom lived in Kansas City. Like diligence is not disclosed by the instant record. Furthermore, defendant transacted the instant business and personally knew the material facts. He gave his testimony thereon at the trial, and, in addition, he was permitted to testify that the accountant informed him he went into every angle of all his books and accounts and that there was not a dollar there that did not belong there. We find no error in refusing the continuance.
Defendant combines his remaining two assignments in his argument. He complains of the form of verdict instruction in that it did not permit of a finding against plaintiff on plaintiff's petition and against defendant on defendant's counterclaima "dogfall"; that the judgment is void because it failed to dispose of the counterclaim, and, in his argument, that the verdict made no finding on defendant's counterclaim. Real errors of this nature are fatal, as held in the cases cited by defendant. Crowley v. Rogers, Mo.App., 181 S.W. 434, 436[2, 3]; Goar v. Belinder, 213 Mo.App. 330, 249 S.W. 977, 980[3, 4]; Severs v. Williamson, Mo.App., 198 S.W.2d 368, 370; Deeds v. Foster, Mo.Sup., 235 S.W.2d 262. However, the mentioned result does not necessarily follow in every instance when the counterclaim is not expressly named in the verdict.
As mentioned in our statement of the pleadings, defendant at the close of the evidence struck out all that portion of his answer relating to punitive damages. There was no dispute that defendant received and cashed the $12,000 cashier's check; that he executed the original note and its renewal, and that he made the stated payments thereon. The issues at the time of submission were whether the indebtedness evidenced by the note existed and plaintiff was entitled to recover the balance due, or whether said indebtedness never existed and defendant was entitled to restitution of the $2,859.74 paid to plaintiff. These were the issues submitted to the jury by the verdict directing instructions. Either plaintiff was entitled to a verdict for the undisputed balance on the note or defendant was entitled to have refunded the payments credited on the purported indebtedness evidenced by the note. Both parties could not win; neither could both parties lose. Clearly, a finding for one would necessarily include a finding against the other. It all depended on whether defendant paid $1,200 or $12,000 for the cashier's check dated December 31, 1946. A verdict against plaintiff on its petition and against defendant on his counterclaim was not authorized under the law as applied to the facts of the case. Ferd Bauer Engineering & Contracting Co. v. Arctic Ice and Storage Co., 186 Mo.App. 664, 172 S.W. 417, 418[1]; Fisher v. Ozark Milk Service, Inc., 356 Mo. 95, 201 S.W.2d 305, 309[4]. The situation may well differ where the claims arise out of another transaction between the parties or where a party having the burden adduces no evidence on the issue.
The form of verdict instruction was the usual instruction and had four blank *609 forms of verdict to meet the situation of a unanimous or a nine-juror verdict; two for plaintiff, each submitting a finding for plaintiff on the note sued on and for plaintiff on defendant's counterclaim; and two for defendant, each submitting a finding for defendant of his payments to plaintiff and for defendant on plaintiff's petition.
The verdict, signed by nine jurors, read: "We, the undersigned jurors, find the issues for the plaintiff and assess its damages at $8,400, with no interest thereon." (The jury overlooked the $200 credit on the principal of the note. Plaintiff filed a remittitur in that amount and judgment was entered accordingly.) The verdict was sufficiently responsive and disposed of the issues under the law and the facts of the case although it did not follow the form of verdict instruction and did not mention the counterclaim. United Iron Works, Inc. v. Twin City Ice & Creamery Co., 317 Mo. 125, 295 S.W. 109, 115[4, 5]; Cosgrove v. Stange, 194 Mo.App. 14, 183 S.W. 691, 692[2, 3]; Nowell v. Mode, 132 Mo.App. 232, 111 S.W. 641, 644; Tuttle v. Chostner, Mo.App., 260 S.W. 819, 821[6]; Ragsdale v. Young, Mo.App., 215 S.W.2d 514, 516[2]; Staples v. Dent, Mo.App., 220 S.W.2d 791, 792[1, 2]. Other cases to like effect are cited in those mentioned.
Although the verdict effectively disposed of the counterclaim, the judgment does not expressly do so. Section 512.160 RSMo 1949, V.A.M.S., provides so far as material here, "3. The appellate court shall examine the transcript on appeal and, * * * give such judgment as such court [trial court] ought to have given, as to the appellate court shall seem agreeable to law." Accordingly, the judgment is modified by inserting therein the following: "and that defendant take nothing by his counterclaim herein".
The judgment, as modified, is affirmed.
WESTHUES and BARRETT, CC., concur.
PER CURIAM.
The foregoing opinion by BOHLING, C., is adopted as the opinion of the Court.
All concur.