Robert K. WHITE, (Appellant),

v.

AMERICAN REPUBLIC
INSURANCE, (Respondent).

No. WD 38125.

Missouri Court of Appeals,
Western District.

Jan. 13, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 3, 1987.

Application to Transfer Denied
April 14, 1987.

Martin M. Bauman, St. Joseph, for appellant.

Wendell E. Koerner, Jr., Keith W. Ferguson, St. Joseph, for respondent.

Before GAITAN, P.J., and DIXON and TURNAGE, JJ.

GAITAN, Presiding Judge.

Robert K. White, plaintiff-appellant, brought this suit to recover under two insurance policies issued by American Republic Insurance Co., defendant-respondent. The trial court granted summary judgment in favor of defendant. Plaintiff appeals from that order alleging the trial court erred in granting summary judgment because there was a genuine issue of material fact to be presented to the trier of fact.

The judgment of the trial court is reversed and remanded for trial.

Plaintiff's wife, Susan White, suffered from breast cancer in 1973, and had undergone a mastectomy. In 1982, plaintiff was issued a policy of insurance with Continental General Insurance Company, but it excluded coverage of Susan for cancer. Susan had received annual checkups by the doctor who performed her mastectomy and no further cancer was detected. Plaintiff believed that Susan had completely recovered from her cancer and should be able to have a medical insurance policy that did not exclude cancer coverage. Therefore, plaintiff made out an application for insurance with defendant on February 25, 1984.

Susan White was thirty-seven years old at the time of plaintiff's application for insurance with defendant and was very active. She exercised and played racquetball. On February 16, 1984, she went to Dr. Richard J. Brennan, an orthopedic surgeon in St. Joseph, complaining of left hip pain which began after a racquetball game. Dr. Brennan examined Susan and his diagnosis was bursitis, an inflammation of the small serous sac between a tendon and a bone. He prescribed Butazolidin. Susan saw Dr. Brennan again on February 23, 1984. She ceased taking the Butazolidin which he prescribed because it did not agree with her. Dr. Brennan gave Susan an injection of Xxlccaine and Depo-Medrol. He was still treating her for bursitis at this time.

Plaintiff filled out the application for insurance with defendant two days later, on February 25, 1984. The application included a question asking plaintiff to list each time during the last five years that each person to be covered by the policy went to a doctor for medical check-ups, consultation, diagnosis, advice or treatment, or to a hospital, clinic or other facility (in-patient or out-patient) for tests or treatment. Plaintiff answered that Susan had seen Dr. Richard Craig for a routine check-up in April, 1983. Plaintiff did not list Susan's two visits to Dr. Brennan. The application also asked plaintiff to list the prescription drugs each person had taken or had prescribed within the last three years. Plaintiff wrote "none" in response to this question. The application inquired as to whether any person had any trouble with, inter alia, his or her:

\*    \*    \*    \*    \*    \*

(F) Reproductive System ... (e.g. breast trouble) such as discharge, cysts, lumps, tumors, etc.;

\*    \*    \*    \*    \*    \*

(H) Musculoskeletal System (e.g. bones, joints, muscles, tendons, spine) such as neuritis, sciatica, arthritis, rheumatism, lumbago, gout, etc.;

\*    \*    \*    \*    \*    \*

Plaintiff responded that Susan had a mastectomy in May, 1973 from which she had recovered, but did not indicate that she was being treated for bursitis. Plaintiff also advised defendant that his health insurance with Continental General had been modified to exclude coverage of Susan for cancer because of her mastectomy.

Susan saw Dr. Brennan again on March 8 and March 20, 1984. The pain worsened when she exercised and, as a result, Dr. Brennan admitted her to Missouri Methodist Hospital on March 20, 1984 to have a bone scan. The results of the bone scan were normal and Susan was released from the hospital. The insurance policies with defendant were issued on March 27, 1984.

Susan saw Dr. Brennan again on April 2, 1984. At this time Dr. Brennan was still treating Susan for bursitis, but on April 2, 1984, a CT scan revealed that there was a tumor within the bones of the pelvis and lower back. Dr. Brennan stated in an affidavit that, from the initial visit at his office until April 2, 1984, he was under the impression that Susan was suffering from a benign process (bursitis).

On April 9, 1984, Susan was admitted to the University of Kansas Medical Center for further testing. The final diagnosis was metastatic breast carcinoma to the liver and bone. She was released from the hospital on April 24, 1984. Susan was admitted to the University of Kansas Medical Center again on October 1, 1984 and new metatases to the brain, bone, and lung were discovered. She was discharged on October 5, 1984. She received radiation therapy and chemotherapy at Truman Medical Center. Susan died on November 24, 1984.

Plaintiff incurred medical expenses of approximately $25,000. When defendant refused to pay under the insurance policies, plaintiff filed this action. Defendant answered plaintiff's petition, admitting that it issued the policies, but stating that the policies did not cover the claims because there was no coverage for pre-existing conditions. Defendant further answered that the policies were voidable as to Susan because plaintiff and Susan made material misrepresentations in the application, and concealed that Susan had been to a doctor.

Defendant also claimed that plaintiff had breached the warranty in the policy to notify defendant of any changes in the answers in the application for insurance. Defendant moved for, and was granted, summary judgment.

In considering a motion for summary judgment, the trial and appellate court must scrutinize the record in the light most favorable to the party against whom the motion for summary judgment is requested and must accord to that party the benefit of every doubt. *Union Elec. Co. v. Clayton Center Ltd.*, 634 S.W.2d 261 (Mo. App.1982). Summary judgment is a drastic remedy and is therefore inappropriate unless the prevailing party has shown by unassailable proof to be entitled thereto as a matter of law. *First National Bank of St. Charles v. Chemical Products, Inc.*, 637 S.W.2d 373 (Mo.App.1982).

There are two issues that must be addressed. First, does plaintiff's failure to disclose in the insurance application Susan's visits to Dr. Brennan cause the policy to be void at defendant's option? Second, was the cancer, diagnosed on April 2, 1984, a pre-existing condition as defined under the policy which is therefore not covered?

As to the first issue, we believe plaintiff's failure to accurately answer the insurance application was not a misrepresentation of material facts so as to make the policy voidable. In *Colbert v. Mutual Benefit Life Insurance Company*, 608 S.W.2d 119, 122 (Mo.App.1980), upon which defendant relies, this court held:

> A material misrepresentation has been determined, "by whether the fact, if stated truthfully, might *reasonably* have influenced the insurance company to accept or reject the risk or to have charged a different premium, and not whether the insurer was actually influenced ..." (citation omitted) (emphasis added).

*Colbert*, however, is factually distinguishable from the present case. In *Colbert*, the plaintiff's son had suffered from an eye impairment since 1968 and had been treated by a doctor several times for the problem. The plaintiff failed to disclose his son's eye condition or the son's treatment by a doctor for his eye condition in answering the insurance application. After the policy was issued, the plaintiff's son again was treated for the same eye condition and the doctor performed an evisceration upon the eye. The insurance company denied the plaintiff's claims for the medical expenses based upon the plaintiff's misrepresentations in the insurance application. In *Colbert*, we determined that the medical records and testimony of the doctor who treated the plaintiff's son "unequivocally established" that the son's eye condition existed prior to the application for insurance and the plaintiff therefore misrepresented a material fact. *Colbert*, 608 S.W.2d at 122.

In contrast to *Colbert*, Dr. Brennan was unaware that there was anything wrong with Susan other than a benign process (i.e., bursitis) prior to April 2, 1984. If plaintiff had answered the questions completely on February 25, 1984, based upon his knowledge at the time, he would have informed defendant of Susan's visits to Dr. Brennan on February 16th and 23rd. He would have also disclosed that Dr. Brennan had prescribed Butazolidin, but that Susan ceased taking it after a short time and no further drugs were prescribed. Plaintiff would have also answered that Susan was having trouble with her "musculoskeletal system" in that she had bursitis. Further, plaintiff would have updated his answers to the application and informed defendant of the bone scan performed on March 20, 1984, the results of which were normal.

Therefore, if plaintiff had accurately completed the application and updated his answers, defendant would have been fully informed that Susan was being treated for *bursitis* by Dr. Brennan. Although defendant states, through the affidavit of William J. Kenyon its vice-president, that had it known of Susan White's illness that defendant would have issued a restrictive endorsement or postponed coverage. The standard, however, is not whether defendant would actually have been influenced, but whether defendant "might reasonably have been influenced" to reject the policy or charge a higher premium. *See Colbert,*

608 S.W.2d at 122. The diagnosis of cancer was not made until April 2. Until that time, Susan was being treated for bursitis. We believe that plaintiff should be entitled to present to a jury the issue as to whether defendant reasonably would have denied the policies of insurance if plaintiff had accurately filled out the application for insurance.

■ Moreover, this result is dictated by § 376.800 RSMo.1978 which provides:

Anything in the law to the contrary notwithstanding no misrepresentation made in obtaining or securing a policy of insurance covered by sections 376.770 to 376.-800 shall be deemed material or render the policy void, or constitute a defense to a claim thereunder *unless the matter misrepresented shall have actually contributed to the contingency or event on which any claim thereunder is to become due and payable, and whether it so contributed in any case shall be a question for the jury.* (emphasis added)

Section 376.773 RSMo defines the types of insurance policies covered by §§ 376.770 to 376.800 to include "any policy or contract of insurance against loss resulting from sickness ..."

In *Lynch v. Prudential Ins. Co.*, 150 Mo.App. 461, 131 S.W. 145 (1910), the court considered whether, under an analogous statute regarding life insurance policies, an insurance policy was void because of misrepresentation. The court stated:

The mere fact that the application contained a false statement with respect to the matter that insured had not been treated by a physician and was in sound health is not sufficient to render the policy void under our statute, *unless it appears he was treated for the disease which afterwards occasioned his death.* Such a misrepresentation is not a warranty, under our insurance law as modified by the rule of the statute, and is wholly immaterial, unless it was made with respect to a fact which actually contributed to the contingency or event on which the policy is to become payable. *Even then, the question whether such representation concerned a matter*

*which did so contribute is one for the jury under the positive mandate of the statute.* (emphasis added)

*Lynch*, 131 S.W. at 146.

Therefore, under § 376.800, in order for defendant to treat the policy as void, it must be established that the matter misrepresented [i.e. that Susan was being treated for bursitis] actually contributed to the event on which plaintiff's claim is made [i.e. Susan's treatment for cancer]. Section 376.800 states that "in any case", this shall be a question for the jury.

■ As to the second issue, defendant claims that coverage of plaintiff's claims should be denied under the policy provisions regarding pre-existing conditions. The policies provide that defendant will not pay for pre-existing conditions or diseases "not admitted on the application for coverage." A "pre-existing condition" is defined in the policies as follows:

(A) the existence of symptoms which would cause an ordinarily prudent person to seek diagnosis, care or treatment within a 5 year period before the date coverage begins for a covered person; or

(B) a condition for which medical advice or treatment was recommended by a doctor or received from a doctor within a 5 year period before the date coverage begins for a covered person.

Further, the policies provide coverage only for a "sickness" which is defined as "a condition, a state of ill health, or an illness first manifested by a covered person while this policy is in force."

The evidence presented in defendant's summary judgment motion did not "clearly and unassailably" establish that Susan's cancer falls within the definition of a pre-existing condition as set out in the policies. Defendant did not show that Susan had any symptoms of *cancer* which would "cause an ordinarily prudent person to seek diagnosis, care, or treatment." The only "condition" for which Susan received medical advice or treatment was bursitis. The results of the bone scan performed on March 20, 1984, prior to the issuance of the policies, were normal. There is no evidence

to clearly and unassailably establish that the suspected bursitis was in fact the metastisized breast cancer. It is equally possible that Susan's cancer was first manifested on April 2, 1984, after the policies were in force; thus falling within the policies' definition of "sickness."

We hold that defendant has failed to show the absence of a material question of fact so as to entitle it to summary judgment. This case is therefore reversed and remanded for trial.

All concur.