**Gerald COMBS, Barbara Combs, Bruce Gray and Rosemary Gray, Plaintiffs–Respondents,**

v.

**Raymond L. GRAY and Rose M. Gray, Defendants–Appellants.**

**No. 15900.**

Missouri Court of Appeals, Southern District, Division One.

April 24, 1989.

John C. Russell, Raytown, for defendants-appellants Raymond L. Gray and Rose M. Gray.

W. Dale Burke, Monett, for plaintiffs-respondents Gerald Combs, Barbara Combs, Bruce Gray and Rosemary Gray.

CROW, Presiding Judge.

This case arises from an $11,700 promissory note dated June 20, 1983, signed by plaintiffs Gerald Combs, Barbara Combs, Bruce Gray and Rosemary Gray, payable to the order of defendants Raymond L. Gray and Rose M. Gray, and secured by a deed of trust on real estate. Plaintiffs'

petition alleged that on October 9, 1985, they tendered to defendants the "full principal and interest due" on the note, said sum being $14,961.84, but that defendants thereafter refused to execute and deliver to plaintiffs a deed of release of the deed of trust. Plaintiffs prayed for judgment commanding defendants to deliver a sufficient deed of release, for $1,170 (10 per cent of the amount secured by the deed of trust), and for other relief immaterial to any issue here.

Defendants counterclaimed, averring that plaintiffs still owed $6,121.96 on the note. Defendants prayed for judgment in that amount, together with interest and attorney fees.

The cause was heard by the trial court without a jury. The trial court entered judgment reciting, among other things, that it "finds the issues in favor of the Plaintiffs and against Defendants." The judgment provided:

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that Plaintiffs having tendered principal and interest on the ... promissory note, that Defendants be, and are hereby ordered, to acknowledge satisfaction of the promissory note ... and to execute a good and sufficient deed of release of the trust deed.... Plaintiffs are hereby granted judgment against the Defendants in the amount of $1,170.00 as per Section 443.130 RSMo."

Defendants appeal, briefing one assignment of error. To grasp its import one must be familiar with the note. We set it forth below, verbatim, pointing out that it was prepared on a printed form with certain blanks being filled in with typewritten words and certain printed words being obliterated by the typed letter "x." To differentiate between what was printed and what was typed we underline the latter. The note:

"$11,700.00        June 20, 1983

For value received the undersigned as principals, promise to pay to the order of Raymond L. Gray and Rose M. Gray, his wife, the sum of ELEVEN THOUSAND SEVEN HUNDRED and 00/100 Dollars payable at 12530 Askew, Grandview, Missouri in one installmentx payable as follows, to-wit: $11,700.00 Dollars on the 20th day of June, 1988, xxx or $11,700.00 Dollars on xxx demand xxx xx xxxxxxxxxxx at which time all principal & interest due xxxxxxx until the whole sum named is fully paid with interest from this date at the rate of 12½% per cent per annum.

Each installment shall be first applied in payment of the accrued interest and then on the unpaid balance of the principal sum. If default is made in the payment of any installment when due, then all the remaining installments shall become due and payable at once at the option of the holder hereof. The undersigned shall have the privilege of paying two or more installments at any time, and as part of the consideration hereof the undersigned agree to pay all the costs of collection, including a reasonable attorney fee, if this note is not paid according to the terms hereof.

[The four plaintiffs' signatures appear here.]"

Defendants' assignment of error is:

"The court erred in its ruling that ... plaintiffs had effected a proper tender of principal and interest prior to the due date (6/20/88) of said note for reason that said court misconstrued and misinterpreted the intent of the parties as evidenced by the wording in the note itself and thus failed to give significant and proper weight to the added word 'demand' in addition to the deletion of the letter 's' from the word 'installments' thereby lending no credence to the maxim that handwritten provisions prevail over those printed, that typewritten portions will prevail over printed matter and that handwritten provisos prevail over both typewritten and printed matter as well in a disputed contractual agreement."

Defendants concede that plaintiffs tendered $14,961.84 to defendants on October 9, 1985, and that said sum was sufficient to pay the principal amount of the note together with all interest accrued as of that date. The sole issue, say defendants, is "whether or not the [n]ote in question was payable in full by [plaintiffs] prior to the date of June 20, 1988." Defendants maintain that the note called for only one payment, which was to be made on June 20, 1988, at which time the principal plus all accrued interest was to be paid. Defendants add, however, that the note provided "as an alternative option" that the principal and all accrued interest was to be due on demand *if* demand were made by defendants. Defendants insist that the option to demand payment in full prior to June 20, 1988, was their option alone, and that plaintiffs had no right to pay the note prior to June 20, 1988. Defendants state, "If no demand was made [by defendants] prior to the stated due date of June 20, 1988, then that date prevailed." Defendants emphasize that the evidence is clear and uncontradicted that they made no demand for payment at any time. Defendants assert that plaintiffs "endeavored to pay off the [n]ote at a time best suited to their fancy."

■ Before considering defendants' theory we must determine whether the judgment is appealable. Defendants, it will be recalled, asserted a counterclaim against plaintiffs. The judgment recites that the trial court finds the issues in favor of plaintiffs and against defendants, and grants plaintiffs relief on their petition. The judgment is silent, however, regarding the counterclaim.

Rule 74.01(b), Missouri Rules of Civil Procedure (19th ed. 1988), provides:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, ... the court may enter a judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated, that adjudicates fewer than all the claims ... shall not terminate the action as to any of the claims ..., and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims...."

As the judgment in the instant case makes no disposition of defendants' counterclaim and contains no express determination by the trial court that there is no just reason for delay, the judgment does not appear to satisfy the requirements of Rule 74.01(b) for finality, and hence appealability. However, guided by *Commercial Nat. Bank of Kansas City, Kan. v. White,* 254 S.W.2d 605 (Mo.1953), we have concluded that the judgment in the instant case is appealable.

In *White* a bank sued the maker of a note for the sum allegedly due and delinquent. The maker counterclaimed, averring the note was given in renewal of an earlier note and that each was without consideration. The maker sought restitution of the amounts he had paid on the note. The judgment awarded the bank a recovery on its petition but made no mention of the counterclaim. On appeal the maker contended, among other things, that the judgment was void because it failed to dispose of his counterclaim. 254 S.W.2d at 608. The Supreme Court explained that the issues submitted to the jury were whether the indebtedness evidenced by the note existed and the bank was entitled to recover the balance due, or whether said indebtedness never existed and the maker was entitled to restitution of the amounts he had paid the bank. *Id.* Either the bank was entitled to a verdict for the undisputed balance on the note or the maker was entitled to have refunded the payments credited on the purported indebtedness evidenced by the note. *Id.* Both parties could not win; neither could both lose. *Id.* Clearly, a finding for one would necessarily include a finding against the other. *Id.* The Su-

preme Court treated the judgment as appealable, rejected all of the maker's assignments of error, and modified the judgment by adding thereto that the maker took nothing by his counterclaim. *Id.* at 609[5]. The rationale of *White* was followed in *Highland Inns Corp. v. American Landmark Corp.*, 650 S.W.2d 667 (Mo.App. 1983), where a judgment for the suing party failed to mention a counterclaim and a cross-claim. The Western District of this Court determined that the judgment for the suing party necessarily constituted a rejection of the counterclaim and cross-claim; consequently, the judgment was final for the purpose of appellate review. *Id.* at 669[1] n. 1.

In the instant case defendants concede, "[B]oth sides cannot win in this matter for if Plaintiffs ... effected a proper tender of principal and interest at the time disclosed by the evidence then the entire subject matter has been determined and Defendants['] ... Counterclaim automatically becomes a nullity." Given this concession by defendants we hold, on the basis of *White* and *Highland Inns,* that the judgment in the instant case is appealable despite its omission of an adjudication on defendants' counterclaim.

■ Turning to the merits, we have seen that defendants maintain plaintiffs had no right to pay off the note before June 20, 1988, thus defendants were not obligated to execute a deed of release freeing plaintiffs' real estate from the lien of the deed of trust when plaintiffs, on October 9, 1985, tendered the entire principal and all interest accrued as of that date. Defendants cite sundry authorities which, according to defendants, support their hypothesis. Plaintiffs, on the other hand, argue earnestly that the language of the note gave them the "privilege of prepayment," and they cite authority allegedly supporting that interpretation.

In our opinion it is unnecessary to determine which side's construction of the note is correct. The tender of principal and interest by plaintiffs to defendants on October 9, 1985, was made by plaintiffs' lawyer, who sent defendants two cashier's checks totaling the full amount of principal and interest accrued as of that date, along with a deed of release. In an accompanying letter plaintiffs' lawyer informed defendants that plaintiffs were exercising their privilege under the note of prepayment in full, and he requested defendants to sign the deed of release in front of a notary public and mail it to the recorder. Plaintiffs' lawyer enclosed his trust account draft payable to defendants covering the cost of notary fees, the recording fee, and postage. All of the documents referred to in this paragraph were received by defendants.

At trial defendant Raymond L. Gray was asked what was done with the cashier's checks tendered by plaintiffs. He disclosed that "after a period of time" defendants deposited the checks in their account. Defendants did not cash the trust account draft from plaintiffs' lawyer, as defendants did not send the deed of release to the recorder.

In their respective briefs both sides ignore the significance of defendants' acceptance of the funds tendered them on October 9, 1985. As we see it, the deposit of the cashier's checks by defendants in their account is dispositive of the litigation.

Defendants correctly assert that the note is a contract. *Grue v. Hensley,* 357 Mo. 592, 210 S.W.2d 7, 11[7] (1948). In *Woolfolk v. Jack Kennedy Chevrolet Co.,* 296 S.W.2d 511, 514[2] (Mo.App.1956), the court held that whatever the parties to a contract see fit to accept as performance of the contractual obligations will be so regarded by the courts. There an automobile dealer sold an automobile to a purchaser, and the parties made an agreement that the dealer would procure collision insurance covering the actual cash value of the vehicle (less a specified deductible) payable to the purchaser and a mortgagee. The premium ($163) for the policy was paid by the purchaser to the dealer. The dealer attempted to obtain such a policy but was unable to

do so. The dealer was, however, able to obtain a policy covering only the interest of the mortgagee, for a premium of $161.40. The dealer forwarded to the purchaser a "daily report" with attached endorsements setting forth the coverage, along with a check for $1.60 representing the difference in the amount of the premium. The purchaser received the documents and cashed the check. Later the automobile was demolished in a collision. The purchaser sued the dealer, seeking the amount of damage sustained by the automobile plus attorney fees. The purchaser's theory of recovery was that the dealer breached the contract to procure insurance by failing to obtain collision insurance protecting the interest of the purchaser. Reversing a judgment in favor of the purchaser, the appellate court said:

> "While [the dealer] failed to procure insurance affording [the purchaser] the protection contemplated by the contract, it is undisputed that a policy was obtained through [the dealer's] efforts, and that [the purchaser] received an abbreviated copy thereof and an exact copy of the endorsements thereon. Thus the issue is narrowed to the question: Do the facts and circumstances show that [the purchaser] accepted the performance by [the dealer] as a full compliance with, and discharge of, its obligation under the contract. If so, it must follow that there was no breach and the case should not have been submitted to the jury. There is good reason and authority for holding that whatever the parties see fit to accept as performance of the contractual obligations will be so regarded by the courts. It is true that there was not an acceptance by [the purchaser] in express terms, but the facts and circumstances point inevitably to an acceptance, which by sound authority may be implied from conduct." *Id.* at 514–15 (citations omitted).

The court in *Woolfolk* went on to state that when the purchaser received the daily report and endorsements he had the right to institute an action to recover damages

for breach of the contract, as a cause of action arising out of contractual relations between the parties accrues as soon as the contract is breached. *Id.* at 515[7]. However, said the court:

> "Not only did [the purchaser] choose to retain the insurance which had been purchased, without objection, protest, or action of any kind, but he accepted and cashed the check sent to him by the [dealer], which covered the difference in the cost of the insurance. Thus it must be held that the [dealer's] performance of the contractual obligation was accepted by [the purchaser]." *Id.*

In the instant case plaintiffs, according to defendants' interpretation of the note, had no right to pay off the note prior to June 20, 1988. Defendants, under their interpretation of the note, were consequently not compelled to accept plaintiffs' tender of all principal and interest accrued as of October 9, 1985. Defendants, under their construction of the note, could have refused to accept the tender and could have insisted that plaintiffs wait until June 20, 1988, to pay the note, at which time plaintiffs would have been required to pay the full amount of principal together with interest accrued from June 20, 1983, to June 20, 1988.

Had defendants refused plaintiffs' tender of October 9, 1985, and had plaintiffs thereafter sued to compel defendants to execute the deed of release, the trial court (and we, had there been an appeal) would have had to decide whether the note conferred on plaintiffs the right to pay it off prior to June 20, 1988. Defendants' acceptance of the tender of October 9, 1985, however, rendered that issue moot.

We underscore the fact that the amount of the tender on October 9, 1985, was not a mere portion of the indebtedness. The parties agree that the amount of the tender equalled the entire principal plus all accrued interest at the specified rate as of the date of tender. The issue, therefore, is whether defendants, having voluntarily accepted that sum, can nonetheless be heard

to say now that plaintiffs had no right to pay off the note prior to June 20, 1988.

We hold that defendants' contention is rejected by *Woolfolk*. It was clear to defendants that plaintiffs' tender was in full satisfaction of the note, as evidenced by plaintiffs' concomitant demand that defendants execute and record the deed of release. Having deposited the cashier's checks in their account, defendants are deemed under *Woolfolk* to have accepted plaintiffs' performance as full compliance with, and discharge of, plaintiffs' obligation under the note.

Indeed, the instant case is a stronger one than *Woolfolk* for application of the principle enunciated there. In *Woolfolk* the purchaser accepted a lesser performance than that for which he had contracted. In the instant case the amount tendered by plaintiffs to defendants on October 9, 1985, and accepted by defendants, represented the entire principal together with all accrued interest as of the date of tender.

The flaw in defendants' position becomes apparent when we consider that the note provides that each installment shall be first applied in payment of the accrued interest and then on the unpaid balance of the principal. Applying the tender of October 9, 1985, to the interest accrued as of that date and then to the unpaid balance of the principal results in a reduction of the unpaid principal to zero. Defendants cite no authority, and we are aware of none, authorizing a lender to earn interest on principal once the principal has been fully repaid.[1]

The rationale of *Woolfolk*, which we follow here, is set forth in Restatement (Second) of Contracts § 278(1) (1981):

"If an obligee accepts in satisfaction of the obligor's duty a performance offered by the obligor that differs from what is due, the duty is discharged."

Comment "a" under the above section explains that if the obligor offers a performance that differs from what is due in full or partial satisfaction of his duty, the obligee need not accept it. If the obligee chooses to accept it, however, the obligor is discharged in accordance with the terms of the offer.

It follows that it is unnecessary for us to decide whether plaintiffs had the right to pay the note in full at the time of the tender on October 9, 1985. If plaintiffs had such right, the amount tendered was sufficient to fully satisfy the note. If plaintiffs did not have such right, defendants could have properly refused the tender. However, when defendants accepted the tender by depositing the cashier's checks in their account, plaintiffs, under *Woolfolk* and the Restatement, were discharged from further liability on the note.

As defendants' acceptance of the tender of October 9, 1985, fully discharged plaintiffs' obligation on the note, the trial court did not err in the relief it granted plaintiffs on their petition. The judgment of the trial court is modified, however, by adding thereto the following sentence: "It is further ordered, adjudged and decreed that defendants take nothing by their counterclaim." As modified, the judgment is affirmed.

HOLSTEIN, C.J., and GREENE, J., concur.

---

1. Defendants presented no evidence as to how they figured that plaintiffs still owed $6,121.96 on the note. Defendant Raymond L. Gray, when asked by plaintiffs' lawyer about the counterclaim, responded, "The counterclaim, [our lawyer] probably did put that in there."