William T. WHITE,
Plaintiff–Respondent,

v.

AMERICAN REPUBLIC INSURANCE
COMPANY, Defendant–Appellant.

No. 16719.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 25, 1990.

Motion for Rehearing or Transfer
Denied Nov. 14, 1990.

Application to Transfer Denied
Dec. 18, 1990.

L. Dwayne Hackworth, Hackworth and Schuller, Piedmont, defendant-appellant.

Lawrence N. Koeln, Centerville, for plaintiff-respondent.

SHRUM, Judge.

This appeal is from a judgment entered in a court-tried case in favor of plaintiff against American Republic Insurance Company (hereafter defendant) for $10,258.50 on Count I and $4,200.00 on Count II for benefits claimed by plaintiff to be due him from defendant on two hospital insurance policies. Defendant's counterclaim seeking recision and cancellation of the policies and return of benefits paid out was not mentioned in the judgment. The defense and counterclaim by defendant were grounded upon the claim that plaintiff had numerous other insurance policies which he failed to disclose when application was made for insurance with defendant and that such misrepresentations were material and voided the policies.

The first policy was a hospital indemnity policy. It was applied for on March 26, 1985, and was issued May 1, 1985. The second policy was a major medical policy issued June 1, 1985.

Initial contact between plaintiff and defendant which led to issuance of the policies, was on March 26, 1985, and occurred as follows. James Collins and his wife were authorized agents for defendant. Plaintiff met Mr. and Mrs. Collins at a restaurant in Ellington, Missouri, at a time when Mr. and Mrs. Collins were visiting with plaintiff's brother and sister-in-law. Plaintiff was invited to sit at the table where plaintiff's brother and Collins were discussing business. Collins introduced himself as "an American Republic" agent. Collins told plaintiff he was a new agent and was going to build a business in Piedmont. He asked plaintiff, "[H]ow do you stand on your insurance?" Plaintiff replied, "I'm covered.... I've got insurance up to my pockets." He told Collins that he had a major medical policy with Medallion Insurance Company and had a "fist full" of supplementary insurance policies. Plaintiff testified he told Collins he didn't need any more insurance, but Collins replied he had just started selling insurance and wanted to "build a business." Plaintiff inquired about the cost. Collins gave him cost figures. Plaintiff then told him to "write it up." A written application for the hospital indemnity policy was prepared by Collins. "Part E" of the application read: "Present Health Insurance: Complete the following for each person on this application who has hospital, surgical, medical expense, Medicare supplement, or limited indemnity insurance in force or pending with American Republic Insurance Company or any other company ..." at the time of application. When the application for the hospital indemnity policy was completed, "Part E" listed only Medallion Insurance Company as other coverage in force or pending at that time. Plaintiff signed the application. Plaintiff testified that Collins told him it made no difference how many supplementary policies he had. Collins denied being told about any supplementary policies. Plaintiff did say that Collins made it clear he could not have two major medical insurance policies. Collins claimed to have asked plaintiff all questions on the application and afterwards plaintiff "glanced at it [the application] and looked it over" and signed it. When plaintiff made the initial application for indemnity hospital insurance with defendant, he had, in addition to the disclosed major medical coverage with Medallion, supplementary hospital insurance coverage with the following companies: CUNA; AARP; Fina; Texaco; Mark Twain; J.C. Penney; Mutual of Omaha; National Home Life; Beneficial Standard; Combined Insurance Company, and Physicians Mutual Insurance Company. These supplementary policies [1] provided, in the aggregate, benefits exceeding $1,000.00 per day for each day of hospitalization.

On May 1, 1985, plaintiff made application to defendant for the second policy. Although he still had the supplementary policies above, only the Medallion policy and the supplementary policy purchased from defendant were listed on the application. Again, Collins filled out the application. Plaintiff signed the application. Plaintiff claimed to have again told Collins about the supplementary hospital insurance policies, a fact which Collins again denied. After making application for and receiving the major medical policy from defendant, the plaintiff did drop the major medical policy he had in force with Medallion Insurance Company.

On July 4, 1985, plaintiff was kicked by a horse in the right arm, left knee and stomach. He went to the Reynolds County Memorial Hospital where he was x-rayed and sent home. Over the course of the next four months, plaintiff was hospitalized four times at two different locations. His first hospitalization was at Missouri Baptist Hospital for knee surgery. Thereafter, plaintiff was hospitalized three times at Poplar Bluff Hospital.

1. These same supplementary hospital policies were held by plaintiff when the major medical hospital insurance application was signed by plaintiff on May 1, 1985.

Plaintiff filed claims with defendant for benefits under both policies for the hospital stays. Defendant paid the claim for the Missouri Baptist hospitalization but denied the claims on the three stays at Poplar Bluff Hospital. Defendant rescinded both policies upon learning plaintiff had multiple insurance coverages in effect. Plaintiff's lawsuit followed.

At trial, plaintiff testified he had received between $35,000.00 and $40,000.00 in benefits on the various hospital insurance policies for the four hospitalizations. When asked why he had so many policies, plaintiff replied that he had the hospital indemnity policies to pay his obligations if he became hospitalized; he had no disability insurance.

Michael Teas, underwriting manager for defendant, testified that applications of potential insureds are reviewed by underwriters to determine whether an applicant is an acceptable risk. He said there are written guidelines concerning persons who are over insured. He further testified that the application questions inquiring about other insurance coverage were material in considering whether or not to issue the policy because "the insurance business has experienced that someone who has multiple insurance policies or is over insured may often times be a professional claimant. It also entices malingering. We also are looking out for other policy holders [sic]. Someone who spends lengthy times in the hospital, the cost is passed on to our other policy holders [sic], and we also do it to protect people from buying policies they don't really need."

The trial court entered judgment[2] for plaintiff and this appeal followed. In its first point, defendant claims trial error because the evidence was undisputed that plaintiff made false statements about other coverage in his application, and such false statements were material because, had the truth been known, defendant would not have issued the policies in question. In that same point, defendant claims the trial court misapplied and misinterpreted § 376.783.3, RSMo 1986. Defendant argues that plaintiff's claims should have been barred by that statute. In deciding the issue presented, it is necessary to examine the history of § 376.783.3 and the law of which it is a part. In 1959, the Missouri General Assembly adopted the "Uniform Individual Accident and Sickness Insurance Law,"[3] effective July 1, 1960. Included as a part of that legislation was § 376.783.3, which reads:

3. The falsity of any statement in the application for any policy covered by sections 376.770 to 376.795 may not bar the right to recover thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer.

It is this statutory provision upon which defendant relies, in part, in it's Point I, for the proposition that the trial court erred in its decision. However, § 376.783.3 was not the latest legislative action which addressed the subject of misrepresentations on health insurance applications. In 1967, the Missouri General Assembly, for the first time, added a "misrepresentation section" as a part of the "Uniform Individual

---

**2.** No findings of fact or conclusions of law were made by the trial court. In its judgment, the trial court found: Count I: "[O]n June 1, 1985, the defendant issued to plaintiff defendant's major medical expense policy number 5647033, providing benefits for hospital room and board, surgical services and other related expenses for injury or sickness; that thereafter, the plaintiff suffered an injury for which he received treatment ...; that the amount of the covered hospital fees and expenses so incurred was $10,758.50, which fees and expenses were reasonable and necessary; and that defendant is entitled to a credit of $500.00 for the deductible amount provided for in the said policy...."

Count II: "[O]n May 1, 1985, the defendant issued to plaintiff defendant's hospital indemnity policy number 5640851, providing a daily benefit of $100.00 for hospital confinement for injury or sickness; that thereafter, the plaintiff suffered an injury for which he received treatment ...; that under the terms of the said policy plaintiff is entitled to hospital indemnity benefits in the amount of $4,200.00...."

**3.** The "Uniform Individual Accident and Sickness Law" was first comprised of §§ 376.770 to 376.795 and, later, § 376.800 was added as part of this law.

Accident and Sickness Insurance Law." That section read:

Section 376.800. Misrepresentation made in obtaining individual accident and health policy no defense, exception.— *Anything in the law to the contrary notwithstanding no misrepresentation* made in obtaining or securing a policy of insurance covered by sections 376.770 to 376.795 *shall be deemed material* or render the policy void, or constitute a defense to a claim thereunder *unless the matter misrepresented shall have actually contributed to the contingency or event on which any claim thereunder is to become due and payable, and whether it so contributed in any case shall be a question for the jury.* (Emphasis added.)

This section is obviously patterned after and closely follows the language of the "misrepresentation statute" for life insurance, currently § 376.580, RSMo 1986.[4] First adopted in 1874, the so-called "misrepresentation statute" has continued to be a part of Missouri life insurance law without change since initial enactment. Laws of Missouri, 1874, p. 89, read:

Section 1. No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable; and whether it so contributed in any case shall be a question for the jury.

Also, *see* § 5976, RSMo 1879; § 5849, RSMo 1889; § 7890, RSMo 1899; § 6937, RSMo 1909; § 6142, RSMo 1919; § 5732, RSMo 1929; § 5843, RSMo 1939; and now § 376.580, RSMo 1986.

It has been said that few statutes have received as much interpretation and construction by the Missouri courts as this law.[5] Section 376.580, RSMo 1986, and its progeny have always been restricted to life insurance policies. However, it was early applied to health and accident policies where such policies provided for payment of a designated sum in the case death should result from accident. *Williams v. Mutual Life of Illinois*, 283 S.W. 64 (Mo. App.1926). *See also Ettman v. Federal Life Ins. Co.*, 137 F.2d 121, 126 (8th Cir. 1943), *cert. denied*, 320 U.S. 785, 64 S.Ct. 193, 88 L.Ed. 472 (1943). Based upon that line of cases, an appellate court in *Limbaugh v. Monarch Life Ins. Co.*, 84 S.W.2d 208 (Mo.App.1935), applied the Missouri life insurance "misrepresentation statute" (then § 5732, RSMo 1929) to a health and accident policy because the policy had a benefit payable in case of death. The case involved loss of the insured's left foot by accidental gunshot. The trial court had directed a verdict for the plaintiff-insured. The record showed that the insured's answers given on the application as to what health and accident insurance he had in other companies were false and incomplete. Further, a statement that two particular policies had been allowed to lapse was untrue. The insurance company claimed those statements were misrepresentations regarding matters material to the acceptance of the risk and entitled it to a directed verdict. That argument was rejected:

[O]ur local misrepresentation statute applies to the case, and, *inasmuch as the misrepresentations relied upon by defendant regarding the insurance carried by plaintiff in other companies had nothing to do with the event or contingency upon which the policy in suit became payable, it follows that such misrepresentations are not to be deemed to have been material, nor are they to be allowed to render the policy void.*

*Id.* at 212 (emphasis added). In clear and unmistakable language, the misrepresentation statute was held to preclude the insurance company from voiding the policies it had issued where the insured had misrepresented facts concerning other insurance

---

**4.** It was early referred to as the "misrepresentation statute" in Mansur, *Insurance—The Missouri Misrepresentation Statute*, 6 Mo.L.Rev. 338 (1941).

**5.** Mansur, *Insurance—The Missouri Misrepresentation Statute*, 6 Mo.L.Rev. 338 (1941).

coverage. This resulted from the fact that such misrepresentations had nothing to do with the event upon which the policy became payable; i.e., losses incurred from loss of plaintiff's foot from accidental shooting.

■ In construing a statute, appellate courts must presume the legislature was aware of the state of the law at the time of its enactment. *Nicolia v. City of St. Louis*, 762 S.W.2d 423, 426 (Mo. banc 1988). Indeed, it has been said that one of the first principles of statutory construction is that appellate courts must presume the general assembly is aware of existing declarations of law by the courts when it enacts statutes pertaining to the same subject; it is further presumed the general assembly enacted legislation in accord with the law as declared by the courts. *Estate of Huskey v. Monroe*, 674 S.W.2d 205, 210 (Mo.App.1984). *See State ex rel. Missey v. City of Cabool*, 441 S.W.2d 35, 41 (Mo. 1969). In 1967, when the legislature enacted § 376.800, it was not venturing into unchartered waters. There existed some 93 years of history and interpretation of the life insurance "misrepresentation statute" when similar language was enacted as § 376.800 and included as part of the "Accident and Sickness Insurance Law." That history included the *Limbaugh* case, which has never been reversed or criticized by the appellate courts of this state.

Following its enactment, interpretation of § 376.800 by Missouri appellate courts has been limited. In *White v. American Republic Ins.*, 726 S.W.2d 357 (Mo.App. 1987), plaintiff's wife had undergone a mastectomy as treatment for cancer in 1973. A policy of insurance issued by Continental General Insurance Company in 1982 excluded coverage of plaintiff's wife for cancer. In 1984, plaintiff applied to defendant for medical insurance. He mentioned the mastectomy but did not mention certain recent doctors visits by his wife or recent bursitis treatments. He did not mention his wife's exclusion on the Continental General Insurance Company policy. Upon appeal, summary judgment in favor of defendant entered by the trial court was reversed, with the court relying, in part, on § 376.800.

[U]nder § 376.800, in order for defendant to treat the policy as void, it must be established that the matter misrepresented [i.e., that Susan was being treated for bursitis] actually contributed to the event on which plaintiff's claim is made [i.e., Susan's treatment for cancer]. Section 376.800 states that "in any case," this shall be a question for the jury. *White, supra*, at 361. As an aid in interpreting § 376.800, Judge Gaitan relied upon the language in *Lynch v. Prudential Ins. Co.*, 150 Mo.App. 461, 131 S.W. 145 (1910), wherein the life insurance "misrepresentation statute" was in issue. This was a recognition that § 376.800 language closely parallelled that of § 376.580 and that cases interpreting § 376.580 aid in deciding issues arising under § 376.800. The interpretation of § 376.800 in *White* was consistent with the interpretation of § 376.580 in *Limbaugh*.

■ Defendant here argues that § 376.800 applies to misrepresentations as to health conditions, or contingencies, or events upon which claims could be made; § 376.783.3 would then apply to other misrepresentations such as the misrepresentations made by this plaintiff. No authority is cited for such proposition. Appellate courts must be guided by what the legislature said, not by what the courts think it meant to say. *Metro Auto Auction v. Director of Revenue*, 707 S.W.2d 397, 401 (Mo. banc 1986); *Missouri Public Service Co. v. Platte–Clay Elec. Coop.*, 407 S.W.2d 883, 891 (Mo.1966). Section 376.800 is the current expression of the legislature on the subject. To the extent § 376.783.3 conflicts with that view, enactment of § 376.800 has repealed § 376.783.3. The words "anything in the law to the contrary notwithstanding ..." found in § 376.800 confirms this court in that view. *Edwards v. St. Louis County*, 429 S.W.2d 718, 722 (Mo. banc 1968). That express language was new to the "Uniform Individual Accident and Sickness Insurance Law" and is certainly some evidence of an intent to make that section controlling as to the entire law. *Id.* The words "anything in the

law to the contrary notwithstanding" simply means that the "Individual Accident and Sickness Insurance Law" misrepresentation provision (§ 376.800) is not to be affected by any law or provision at variance with it. "If, in fact, the intent was otherwise the legislature can easily remedy the situation at its next session." *Id.*

This court finds that § 376.800 applies to the misrepresentations made by plaintiff about other insurance coverage. It was, therefore, necessary by reason of § 376.800 that defendant prove that plaintiff's misrepresentations as to other insurance coverage actually contributed to the event on which the claim became due and payable. The event on which the claim became due and payable was the treatment of ˚plaintiff for injuries sustained when a horse kicked him. Evidence that plaintiff's false statements concerning other insurance coverage affected the acceptance of the risk by the defendant, or the hazard assumed by the defendant, is not sufficient to meet the requirements of § 376.800 that the misrepresentations contributed to the claim.[6] In fact, defendant admits in its brief that "[t]he misrepresentations made by White had no relationship to the claims he eventually made." The clear language of § 376.800, together with the case law interpreting § 376.580 serving as a guide, prevents defendant from voiding the policies because plaintiff's misrepresentations admittedly had no relationship to the claims he ultimately made.

Finally, in Point I, defendant argues that the trial court should have concluded that the misrepresentations were material because sufficient evidence was presented in support of that position. That argument ignores the plain language of § 376.800, it ignores the *Limbaugh* case, and it ignores defendant's admission that

"[t]he misrepresentations made by White had no relationship to the claims he eventually made." The applicable standard of appellate review is whether the trial court could have reasonably decided as it did. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The general rule is that plaintiff made a prima facie case by showing that the policy was in force at the time the loss occurred. *Haynes v. Mo. Prop. Ins. Placement Facility*, 641 S.W.2d 497, 499 (Mo.App.1982). That general rule applies to medical and hospital insurance policies. When plaintiff here established issuance and delivery of the policy, payment of the premium, a loss caused by the peril insured against, notice of loss and proof of loss, plaintiff made a prima facie case. *Nixon v. Life Investors Ins. Co. of America*, 675 S.W.2d 676, 679 (Mo.App.1984). Once a prima facie case was made by plaintiff that his loss came within the coverage of the policies, the burden shifted to the defendant to show an excuse for non-payment. *Martin v. Prier Brass Mfg. Co.*, 710 S.W.2d 466, 473 (Mo.App.1986). Thus, the burden was upon defendant to prove that the misrepresentations by plaintiff concerning other coverage were material by which it could avoid liability. *Nixon, supra*, at 679; *Haynes, supra*, at 499. Here, the trial court made no findings of fact or conclusions of law, and in such circumstances, all fact issues are considered as having been found in accordance with the result reached. *Mills v. Cameron Mut. Ins. Co.*, 674 S.W.2d 244, 249 (Mo.App. 1984). Defendant has admitted what the record clearly shows; namely, that "[t]he misrepresentations made by White had no relationship to the claims he eventually made." Accordingly, this court finds that the record supported a finding that defendant could not void the policy because there was no evidence that plaintiff's misrepre-

---

**6.** Defendant argues that if § 376.800 is so applied in this case, it renders § 376.783.3 meaningless. This does not necessarily follow. In those cases where there is evidence offered that the existence of extra insurance coverage was a motive for the insured to assert bogus, fictitious or fraudulent claims or prompted him to malinger or fake accidents or ailments in order to collect the coverage, then the matter misrepre-

sented [i.e., excessive insurance coverages] might be determined to have actually contributed to the event on which the claim became due. In such event § 376.800 and § 376.783.3 would be available as a defense to the insurance company if it met its burden of proof of convincing the trier of fact (judge or jury) of such facts. No such evidence was offered in this case.

sentations had any relationship to the claim he eventually made. As such, defendant would not have met the burden of proof imposed on it by § 376.800. Point I is rejected.

In Point II, defendant claims the trial court erred in entering judgment for plaintiff because of a lack of evidence that the medical services rendered plaintiff were necessary and that the charges were reasonable. Defendant further alleges that there was no foundation to support the admission of testimony of Dr. Vanderbroek and Barbara Warbington concerning necessity for the medical services and reasonableness of the charges. The major medical policy described "eligible expenses" as the "regular and customary charges in the locality where the services . . . are provided. Eligible expenses must be for medically necessary treatments and services. . . ." The language of the indemnity policy read: "We will pay the benefit amount listed . . . for confinement for medically necessary treatment and services given for each injury or sickness." Plaintiff had the burden of proving that the medical services rendered were necessary and were reasonable.[7] To meet that burden, plaintiff called a Dr. Vanderbroek.[8] For each of the three hospitalizations of plaintiff at Poplar Bluff Hospital, Dr. Vanderbroek was shown plaintiff's deposition exhibits 1, 2 and 3.[9] When asked to identify the exhibits, Dr. Vanderbroek said, "Yes, I reviewed that [the medical records]." On each occasion, counsel objected on the basis that the records were hearsay and that there was a lack of foundation for the opinions which Dr. Vanderbroek expressed concerning those records. On each hospitalization, Dr. Vanderbroek testified that from a review of the records (referring to deposition exhibits 1, 2 and 3 dated 6/30/90), he determined (a) the reason for plaintiff's hospitalization; (b) the treatment rendered; and (c) based upon his experience in treating other patients, that the treatment was necessary.[10] On cross-examination, Vanderbroek acknowledged he had never seen plaintiff professionally before the hospitalizations and had no knowledge of the preparation of the documents marked deposition exhibits 1, 2 and 3 (dated 6/30/89). After Dr. Vanderbroek testified that he was not really familiar, in detail, with costs for hospitalization and did not specifically know the charges for special examinations or laboratory procedures in the area, he

---

7. Most Missouri appellate decisions which discuss the requirement that plaintiff prove the reasonable necessity and reasonable value of medical expenses as an item of damage, do so in the context of tort cases. "The usual rule is that a plaintiff may not recover damages on account of items of special damage such as here involved (the doctor bills and hospital bills) *in the absence of proof* respecting the reasonable necessity and reasonable value of those services." *Brautigam v. Hoffman,* 444 S.W.2d 528, 534 (Mo.App.1969). Also, see *Begley v. Adaber Realty & Inv. Co.,* 358 S.W.2d 785, 795 (Mo.1962); *Spica v. McDonald,* 334 S.W.2d 365 (Mo.1960); *Green v. Hastings,* 621 S.W.2d 549, 551 (Mo.App. 1981). Such principles are equally applicable to a contract case when the insurance policy language clearly requires that the medical services be necessary and that the charges be reasonable before the insurer owes the claim.

8. Dr. Vanderbroek was not plaintiff's treating physician. There was evidence that the Poplar Bluff Hospital had closed and that plaintiff's treating physician, Dr. Kwoun, had left the area.

9. Plaintiff's exhibit 1 purported to be certain hospital records of William T. White at Poplar Bluff Hospital, Inc., for inpatient hospitalization of 7/30/85 through 8/22/85. Exhibit 2 purported to be similar records for 9/10/85 through 9/19/85, and exhibit 3 purported to be inpatient hospital records for William T. White for 10/22/85 through 10/29/85.

10. For example, regarding exhibit 1, the following occurred:

Q. Do you have an opinion as to whether or not the treatment that was provided to Mr. White at the Poplar Bluff Hospital from . . . 7/30 to . . . 8/22/85, whether that treatment was necessary?

Following defendant's objection, the following occurred:

A. *It would be on the information that I have from the chart.* It would seem that the patient was given treatment at home, which he didn't respond to, and that at that time he was brought in to the hospital for more intensive treatment, which from the information that I have would be appropriate.

The same type questions and the same type answers are found with respect to plaintiff's exhibits 2 and 3.

was never asked if the charges to plaintiff were reasonable.

The former business manager of Poplar Bluff Hospital testified. She said her duties included responsibility for business records of the hospital, but not the medical records. She was not, therefore, asked to identify the medical records (deposition exhibits 1, 2 and 3 of 6/30/89). The business manager did identify deposition exhibits 1, 2 and 3 (dated 8/29/89) as itemized statements of the hospital charges for each of the disputed inpatient hospitalizations of plaintiff at Poplar Bluff Hospital. When asked about her familiarity with the reasonableness of the charges, she testified that the room and board charges were reasonable, based upon her experience. However, while she was familiar with the other charges on the account (i.e., drugs and medicines, diagnostic procedures, hospital supplies and treatments), the business manager could not say that these charges were reasonable. Plaintiff initially testified that he felt the charges were reasonable. However, on cross-examination, plaintiff admitted that he did not know if they [the charges] were reasonable or were the same charges as would be charged for everybody else for the same type of injury.[11]

▆ In this case, defendant made timely objections to the testimony of Dr. Vanderbroek and renewed those objections when the deposition was offered into evidence. The trial court withheld ruling on the objection and took the case under submission. Since the trial court never ruled on defendant's objections, it is assumed the objections were overruled. *Welch v. Welch*, 633 S.W.2d 447, 449 (Mo.App.1982). The admission of, and consideration of, Dr. Vanderbroek's testimony was prejudicially erroneous because the only foundation for his testimony was his review of plaintiff's hospital records from Poplar Bluff Hospital. Hospital records are readily admissible under the provisions of § 490.680, RSMo 1986,[12] *provided there is a preliminary showing of the identity of the record, the mode and time of its preparation, and that it was made in the regular course of business.* Mo. Sources of Proof, §§ 3.5, 3.9 and 3.10 (Mo.Bar 2d ed. 1977); *Allen v. St. Louis Public Service Company*, 365 Mo. 677, 681–82, 285 S.W.2d 663, 666, 55 A.L.R.2d 1022, 1027 (1956); *Miller v. Engle*, 724 S.W.2d 637, 640 (Mo.App. 1986).

▆ In this case, no showing was made that deposition exhibits 1, 2 and 3 were a record of acts or events "made in the regular course of business, at or near the time of the act, condition or event." No testimony was offered to show the "mode of its preparation." The records were, therefore, not shown to be business entries and were hearsay and were inadmissible. *Gray v. St. Louis–San Francisco Ry. Co.*, 363 Mo. 864, 871, 254 S.W.2d 577, 580 (1952). Defendant did not here, as in *Melton v. St. Louis Public Service Co.*, 363 Mo. 474, 485–86, 251 S.W.2d 663, 669–70 (1952), waive objection to the reliability of the record and confine its objection on the grounds that only some portions were hear-

11. On cross-examination, respondent testified to the reasonableness of his charges as follows:
    Q. [By appellant's counsel] You don't really have any idea the charges made by the doctors or hospital, whether or not they are reasonable, do you?
    A. Well, I know they are all high. He charged me $95.00 just for one office call.
    Q. Well, do you think they are not reasonable then? Do you think they are high?
    A. You got to pay for what you get.
    Q. My question is, do you have any idea whether or not they were reasonable?
    A. They are all high, so I guess they're reasonable.
    Q. So you wouldn't know what each individual item should be charged for, is that right, if you—

    A. No, I would not.
    Q. How would you know if they're reasonable then if you don't know what each charge is?
    A. I don't.
    Q. So you really don't know, is that what you're saying?
    A. I just paid the price.
    Q. You don't have any idea if they charge the same as what everybody else charges or not for the same type of injury, do you?
    A. No, I don't.

12. Statute commonly known as the "Uniform Business Records as Evidence Law," §§ 490.660 to 490.690, RSMo 1986.

say. The objection by defendant was that the entire record was hearsay. The objection was a valid one, the entire record was hearsay and was admissible only if made so by the Business Records Act. *Gray v. St. Louis–San Francisco Ry. Co., supra,* 254 S.W.2d at 580.

▮▮▮▮ The medical records from the hospital were not admissible. This left Dr. Vanderbroek in the position of expressing his opinion based on records not in evidence. It is the rule in Missouri that the facts or dates upon which an expert bases his opinion may be those perceived by him or hypothesized by him at the hearing; however, an expert opinion (other than one stated on cross-examination) based in part or whole upon hypothesized facts cannot be based upon facts or date not of record or not admissible as evidence. Mo. Evidence Restated, § 703 (Mo.Bar 1984); *Myers v. Bi–State Development Agency,* 567 S.W.2d 638, 642 (Mo. banc 1978). A doctor's opinion, like that of any expert, is in the nature of a conclusion of fact, *but it must have a substantial basis in the facts actually established,* and such opinion cannot be invoked to establish the facts. *Butcher v. Main,* 426 S.W.2d 356, 359 (Mo.1968). An expert medical opinion must be based upon matters within the expert's personal knowledge or observation, or upon competent evidence in the case, or upon both. *Oesterle v. Kroger Grocery & Baking Co.,* 346 Mo. 321, 326, 141 S.W.2d 780, 782 (1940).

Here, Dr. Vanderbroek's opinion was not based upon competent evidence or upon personal knowledge or information. His opinion was based solely on documents which were hearsay and never brought within any exception (including Business Record exception) which rendered them admissible; hence, competent evidence. Accordingly, the trial court erred in admitting the testimony of Dr. Vanderbroek. That error was prejudicial and requires the case to be reversed on the issue of damages inasmuch as Dr. Vanderbroek's testimony was the only evidence submitted on an essential element of plaintiff's case; namely, that the hospital and medical services for which he sought payment under the insurance policy were for medically necessary treatments and services given for an injury or sickness.

▮▮▮▮ In addition, the record fails to show, in some respects, sufficient substantial evidence to support a finding that the expenses for which plaintiff sought reimbursement or payment under the major medical policy were the regular and customary charges in the locality. There was direct evidence from the business manager at Poplar Bluff Hospital as to the reasonableness of the "room and board charge." The room and board charges were: (a) $2,277.00, shown on deposition exhibit 1; (b) $792.00, shown on deposition exhibit 2; and (c) $693.00, shown on deposition exhibit 3. Thus, of the $10,258.50 judgment on Count I (the major medical policy), $3,762.00 was for room and board. There was not a scintilla of evidence offered regarding the reasonableness of the charges for the balance of the hospital services ($6,496.50). The rule applicable to the issue at hand [the reasonableness of medical expenses] is well stated in *Wise v. Towse,* 366 S.W.2d 506, 508 (Mo.App.1963): "The general rule is that charges for medical services ... must be supported by substantial evidence that they were reasonable and the services reasonably necessary in order for them to be recoverable. *Spica v. McDonald,* Mo.Sup., 334 S.W.2d 365; *Girratono v. Kansas City Public Service Co.,* 363 Mo. 359, 251 S.W.2d 59 (9–10); *Heibel v. Robison,* Mo.App. 316 S.W.2d 238." *Wise* recognized that the reasonableness of the charges (as well as the necessity for the services) can be established by reasonable inferences drawn from the evidence. *See also Hay v. Ham,* 364 S.W.2d 118[14] (Mo.App.1962), and *Sparling v. Hoard,* 380 S.W.2d 940, 12 A.L.R.3d 1341 (Mo.App. 1964), recognizing that substantial evidence that charges for services were reasonable could be inferred from payment. However, plaintiff is not here entitled to that inference because even though plaintiff collected between $35,000.00 and $40,000.00 from the various policies, he had not paid any of the hospital bills at Poplar Bluff Hospital. Mere receipt by the plaintiff of a statement from the hospital billing him for the servic-

es does not supply the substantial evidence required to prove reasonableness of the charges. *Spica v. McDonald, supra,* at 371. The Supreme Court of Missouri in considering the reasonableness of medical charges in the case of *Hay v. Ham, supra,* stated,

> [W]hen it is considered ... that his [the doctor's] services had continued at regular intervals over a period of four or five years; that he was a reputable physician; that there was no evidence tending to show collusion or bad faith; that defendant did not question the reasonableness of the account; and that the plaintiff acknowledged the indebtedness; we think the evidence must be taken as affording a basis for a fair inference that the charges were reasonable. Nothing whatsoever to the contrary appearing, we must presume and ascribe honest motives, good faith, and right conduct.

*Hay, supra,* at 126.

There is no evidence that the factors considered in *Hay v. Ham* existed in this case. The record does not reveal that the treating physician's services had continued at any regular intervals. No evidence is found that the physician who admitted plaintiff to the Poplar Bluff Hospital was a reputable physician.[13] Receipt by the plaintiff of $35,000.00 to $40,000.00 in insurance benefits without paying the hospital bills affords some basis for an inference of bad faith in these hospitalizations. This court cannot, based upon the record, necessarily ascribe honest motives, good faith and right conduct to plaintiff, his physician or the hospital. Accordingly, except as to the room and board charges, there was not sufficient substantial evidence to support the reasonableness of the charges. This was an essential element of plaintiff's proof on Count I. Having failed to meet that burden as to Count I, the trial court's judgment must be reversed and the matter remanded for trial on the issue of damages. No new trial is ordered on the issue of liability given the admission by defendant in its brief that "[t]he misrepresentations made by White had no relationship to the claims he eventually made." That being true, and given this court's finding that § 376.800 is applicable to misrepresentations as to other insurance, that issue has been laid to rest.

■ In Point III defendant asserts error in the denial of its counterclaim alleging that the policies were void ab initio because of what defendant claimed were the material misrepresentations by plaintiff as to other insurance coverage; hence, defendant was entitled to recover the amount it paid on behalf of plaintiff for his hospitalization at Baptist Memorial Hospital. Initially, it should be noted that the judgment here entered makes no disposition of defendant's counterclaim. No express determinations are made by the trial court that would satisfy the requirements of Rule 74.01(b) for finality; hence, appealability. However, the subject matter of defendant's counterclaim; namely, the claim that the policies were void ab initio because of the misrepresentations by plaintiff in the application as to other insurance coverage, is necessarily determined adversely to defendant when this court found that § 376.800 applied to the misrepresentations at issue. *Highland Inns Corp. v. Am. Landmark Corp.,* 650 S.W.2d 667, 669 (Mo. App.1983). By defendant's admissions and from the evidence, it is clear that the misrepresentations by plaintiff bore no relationship to the claim he made. Under the facts here presented, both parties could not win; neither could both lose on the issue of whether or not the misrepresentations were material. By statute, § 376.800, the

---

13. On cross-examination of plaintiff, the following testimony was elicited:

> Q. You don't have any idea if they [Poplar Bluff Hospital] charge the same as what everybody else charges or not for the same type of injury, do you?
> A. No, I don't.
> Q. Now the Poplar Bluff Hospital is now out of existence, it's closed, isn't it?
> A. I believe so.
> Q. And Dr. Kwoun is gone, isn't he?
> A. I believe so.
> Q. He's left the area. Didn't he have some trouble with his medical license?
> A. Sir, I don't know.
> Q. You were not aware that he had his license suspended?
> A. No, I did not know that.

misrepresentations were not material. Defendant paid the claim presented for plaintiff's hospitalization at Baptist Memorial Hospital and thereby waived any claim that the services were not necessary or that the charges were unreasonable. Clearly, a finding that the misrepresentations were not material as to plaintiff's claims would necessarily include a finding against defendant on that same issue as to its counterclaim. *Commercial Nat. Bank of Kansas City, Kans. v. White*, 254 S.W.2d 605, 609 (Mo.1953); *Combs v. Gray*, 769 S.W.2d 806, 808 (Mo.App.1989). Relying on *Highland Inns, White*, and *Combs*, we find the judgment for plaintiff necessarily constituted a rejection of defendant's counterclaim and that the judgment is appealable despite omission of an adjudication on defendant's counterclaim. *Combs v. Gray, supra*, at 809. Since this court has previously found that § 376.800 applies to the misrepresentations in plaintiff's application, and since defendant has admitted that "[t]he misrepresentations made by White had no relationship to the claims he eventually made," judgment should be entered for plaintiff against defendant on defendant's counterclaim. Point III is without merit. The cause is remanded. The trial court is directed to enter judgment in favor of the plaintiff and against defendant on defendant's counterclaim.

Affirmed as to counterclaim but remanded for entry of judgment; reversed and remanded for new trial on the issue of damages as to Counts I and II of plaintiff's petition.

FLANIGAN, C.J., and PARRISH, P.J., concur.

FLANIGAN, Judge, concurring.

I concur with the principal opinion. With respect to defendant's first point, I concur only because I agree with reluctance that § 376.800 has the effect of repealing that portion of § 376.783.3 dealing with a false statement materially affecting "the acceptance of the risk" by the insurer. In this day of ever-increasing medical and hospitalization expenses, the legislature might see fit to reconsider the wisdom of a statute which has the effect of permitting a misrepresenter to profit by multiple policies whose existence he has denied. Truthful policy holders bear the burden of his ill-gotten gains.